CORNELIUS V. TRAPHAGEN and others

*v.*

THE MAYOR AND ALDERMEN OF JERSEY CITY.

1. A suitor who seeks to have a public improvement enjoined must apply promptly, show an invasion of a clear right, and that he has no other adequate remedy.

2. A suitor who by laches has made it impossible for the court to enjoin his adversary without inflicting great injury upon him, will be refused the aid he asks and left to pursue his ordinary legal remedy.

3. An injunction will be refused to a complainant who has intentionally delayed his application until he has obtained an inequitable advantage of the defendant.

4. The use of a public street for the construction of a sewer, is lawful.

On motion for injunction, heard on bill, answer and affidavits.

*Mr. S. B. Ransom,* for motion.

*Mr. John C. Besson, contra.*

THE VICE-CHANCELLOR.

The complainants ask to have the defendants restrained from constructing a sewer over their lands. They say the public have not acquired, in any mode, a right in, or an easement over the *locus in quo,* and that if the defendants are not restrained from committing the acts they threaten, a most flagrant violation of the right of private property will ensue, resulting in irreparable damage to them. The case made by the bill clearly entitles the complainants to the aid of the court; but, in stating their case, it is now patent they omitted facts, within their knowledge, which, in my judgment, render it entirely plain the court ought not to interfere. I do not believe they were withheld with a design to impose upon the court, or to procure an improper

Traphagen *v.* Mayor and Aldermen of Jersey City.

use to be made of its process. The defendants, by their answer, show that the *locus in quo* was laid down and marked as a public street on a map made and filed in 1804; that by a subsequent map, made by the authorities of Jersey City, in 1861, it was laid down as a public street, and called Jersey avenue; and that, pursuant to an ordinance approved April 22d, 1870, the municipal government took possession of it, graded, guttered and curbed it, and flagged the sidewalks, and have ever since used it as a public street. Over the complainants' land the grade was raised about four feet above the natural level. On the argument the truth of these allegations was admitted by the complainants' counsel. It is not shown that the complainants, or those under whom they claim, authorized or directed either of the maps to be made.

The defendants are engaged in the construction of an important public work, the speedy completion of which, it would seem, is indispensable to the proper protection of the public health. In such a case this court must not put in force its prohibitory power unless it is the only means by which adequate redress can be given. To induce the court to act, there must be promptitude, an invasion of a clear right and no other adequate remedy.

It is undisputed that the complainants have permitted the public authorities to oust them, and to take possession of the land they now claim, and to expend, in preparing it for use as a public street, a large amount of public funds, and that since it has been so prepared they have stood by, quietly, and permitted it to be constantly appropriated to the purposes of a public highway. Under these circumstances, I take it to be too clear for argument that they have so far encouraged or sanctioned the action of the public authorities as to divest themselves of the right to demand that a court of equity shall now, by its interdiction, deprive the public, even temporarily, of the benefit of its expenditure. *M. and E. R. R. Co.* v. *Prudden,* 5 *C. E. Gr.* 530; *Easton and McMahon* v. *N. Y. and Long Branch R. R. Co.,* 9 *C. E. Gr.* 49.

This court will even refuse to exert its prohibitory power in aid of rights asserted on behalf of the state, when it appears that its representatives, by silence and inaction, have presumably encouraged the outlay of large sums of money in the prosecution of an important public enterprise, undertaken in good faith, and which, if arrested, would bring disaster upon its projectors. *Att'y-Gen.* v. *Delaware and Bound Brook R. R. Co.*, 12 *C. E. Gr.* 1. The complainants, by laches, if not by acquiescence, have lost all right to have the use of this street forbidden. By delay they have made it impossible for the court to give them the special relief they ask without doing great and irreparable injury to the public; they have, therefore, no claim to such relief as it is the peculiar province of courts of equity to give, but must be left to pursue their ordinary legal remedy. A court of equity cannot permit them to speculate upon the chances. The public authorities, doubtless, when they took possession, believed the public had acquired a right to the use of this land as a public highway by dedication. If the complainants were not willing it should be taken for a public highway, for all purposes, without compensation first being made; their remedy was clear, and the course to be pursued plain. It may be that if the alternative had been promptly offered to the municipality to pay for the land before taking possession of it, or to let it alone, they would have let it alone; but the complainants, instead of adopting that course, have knowingly permitted their land to be appropriated, at great expense, to public use, and now, when the public authorities have reached a point in the prosecution of the work where retreat is impossible, this court is asked to stretch forth its arm. The appeal comes too late; besides, there is reason to believe the complainants' delay was designed.

The use of a public street for the construction of a sewer is lawful, as much so as the use of it for travel. *Stoudinger* v. *Newark City*, 1 *Stew.* 187; *S. C. on appeal, Ib.* 446.

On June 14th, 1870, the complainants presented a remonstrance to the defendants against the proceedings already taken for the opening of this street. This did not relieve them from the consequences of their subsequent laches. *Easton and McMahon* v. *N. Y. and Long Branch R. R. Co.*, *supra*. Besides, the remonstrance did not deny a dedication, but simply disputed the regularity of the proceedings for opening.

The case made does not entitle the complainants to the relief they ask; their application must, therefore, be denied, and the order to show cause discharged.