THE STATE, SOLON HUMPHREYS, ALFRED W. BOOTH AND THE BAYONNE AND GREENVILLE GAS LIGHT COMPANY, PROSECUTORS, v. THE MAYOR AND COUNCIL OF THE CITY OF BAYONNE AND THE BAYONNE CITY ELECTRIC LIGHT AND POWER COMPANY

The city of Bayonne has no power to make a contract for lighting streets for a period of five years when no provision is made to meet the obligations of the city to pay the price named in such contract for that period.

On *certiorari*.

This writ brings up an ordinance to authorize the Bayonne City Electric Light and Power Company to erect poles and wires in the streets, avenues and public places of the city of Bayonne, for the purpose of conveying and distributing electricity for lighting, heating and power purposes.

Argued at November Term, 1892, before Justices DEPUE and REED.

For the prosecutors, *Joseph D. Bedle.*

For the defendants, *William D. Edwards* and *Charles D. Thompson.*

The opinion of the court was delivered by

REED, J.    Two taxpayers and a competing light furnishing company prosecute this writ to test the legality of the ordinance brought up.

The first reason assigned for its invalidity is that the mayor, by reason of improper influences, permitted the ordinance to become a municipal law.

Under the charter of Bayonne an ordinance having been passed by the common council can become a law by the approval of the mayor or upon his failure to veto the same within a certain period.    The mayor did not approve the present ordinance, but permitted it to become a law by his inaction.    In explanation of his reasons why he had determined not to veto the ordinance, he addressed a letter to the common council setting forth that the electric light company had promised to do certain things.    The promises which the company thus made were not incorporated in the ordinance itself. It is urged that the representations so made and which, it is claimed, would be unenforceable because not incorporated in the ordinance, unduly influenced the mayor in his official conduct.

I am unable to accede to the soundness of this proposition. The ordinance, upon acceptance, would have become a contract, and it must stand upon the footing of any other proposition which upon acceptance would assume the same position.    It is not claimed that the proposal was induced by fraudulent representations, so the effect of fraud upon an ordinance of this character is not now in question.    The claim is, that the mayor, with every opportunity to know the text of the ordi-

nance, permitted it to become effective because he believed that the company would do certain other things, which other things the company has not and may not fail to do.

It is doubtful whether even fraudulent representation is sufficient to invalidate an ordinance passed by reason of its influences, and no case can be found in which a mere statement of the kind in question has been permitted to invalidate a legislative or municipal law because passed by reason of its inducements.

It is next objected, that the city had no right to impose conditions upon the electric light company in consideration of which a grant of permission to use the public streets should be made. That conditions may be imposed upon a corporation like the present asking the use of public streets cannot be questioned. *Dill. Mun. Corp.,* § 558; *Railroad Co.* v. *Leavenworth,* 1 *Dill.* 393; *Davis* v. *Town of Harrison,* 17 *Vroom* 79, 84.

But the scope of the conditions which the municipality may impose is a question of some nicety, the settlement of which is not now called for. It is not called for, because the electric light company is not complaining that the city is refusing its permission except upon unreasonable conditions. So far as appears, this company is entirely satisfied to accept the grant of the privilege proposed in the ordinance upon the terms therein designated. The conditions contravene no principle of public policy, and as between the parties to the contract are entirely valid, if those parties choose to stand by them.

But there is another ground upon which the validity of the ordinance is challenged. The ordinance contains a stipulation, which, upon the acceptance of the ordinance by the electric light company, will bind the city to pay for a certain number of arc lights a certain sum per night for a term of five years. The ordinance does not contain merely a stipulation giving the city an option to have these arc lights for the period of five years, if any succeeding council sees fit to adopt the terms of the ordinance. Such a condition would be entirely unobjectionable. But, as is perceived, the city will be

bound absolutely to pay a nightly sum for a period of five years.

Now, the common council has power, under section 40, subd. 19, of the charter of 1869 (*Pamph. L., p.* 387), to provide street lamps for and to light the streets either by gas or other material, and in section 45 of the same act the right to establish lamp districts.

The ordinance to direct assessments for the year 1892 is put in evidence, and in it is an item of $20,000 for lighting streets and public highways. The amount which would be due under the contract which would result from an acceptance of this ordinance would exceed $50,000. The amount of debt which would be thus incurred by the city would be largely in excess of this appropriation, as this appropriation is for one year only and the liability under the contract extends over a period of five years.

The facts thus apparent brings this case within the control of the rule laid down in the case of *The Atlantic City Water Works Co.* v. *Reed,* 21 *Vroom* 665. This ordinance, to quote the language of Mr. Justice Dixon in the last-mentioned case, fixed a limit of expenditure within which the obligation incurred cannot possibly be confined. Under the statute of 1876 (*Rev., p.* 1294) as interpreted in *Halstead* v. *State,* 12 *Vroom* 552, and in *Water Works* v. *Read, supra,* that part of the ordinance which extends the contract over the last four years is void.

What effect does this result have upon the remaining part of the ordinance? The answer to this question depends upon the severability of the void part from the rest of the ordinance. It is obvious that the common council regarded the whole ordinance as inseparably connected. This appears from the last section, which provides that it shall not be binding, nor shall any poles be erected, until its terms shall be accepted. As the void part is thus the essential part of the ordinance the whole falls. *Davis* v. *Township of Harrison,* 17 *Vroom* 79, and cases cited on page 86.