JERSEY CENTRAL POWER AND LIGHT COMPANY, A CORPORATION, PROSECUTOR, v. BOROUGH OF SEASIDE HEIGHTS IN THE COUNTY OF OCEAN, DEFENDANT.

Submitted May 15, 1936—Decided October 9, 1936.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and PERSKIE.

For the prosecutor, *Autenrieth & Wortendyke.*

For the defendant, *Powell & Parker.*

The opinion of the court was delivered by

CASE, J. The writ brings up for review ordinance No. 194, passed October 5th, 1935, by the council of the borough of Seaside Heights, in the county of Ocean. The ordinance provides for the construction and financing of an undertaking which in the terms of the ordinance is to consist of "extensions, enlargements and improvements to the electric light and power system of the Borough of Seaside Heights." That language, however, is not aptly descriptive. The project, according to the stipulated fact, is to be the erection, construction and acquisition by the municipality of a light, heat

and power plant or works for the manufacture and production of electric energy. The ordinance was passed without regard to, and with no provision for, a referendum of the question to a public vote. No supplemental debt statement was filed with the municipal clerk prior to the passage of the ordinance; but it is stipulated that the percentage of the net debt of the municipality to the average of the assessed valuations is 26.72 per cent. The ordinance also provides that the work shall be paid for by deferred payments which are to be evidenced by coupon revenue certificates of the municipality, bearing interest at the rate of four and one-half per centum per annum from the date of completion, payable on due dates spread over a period of nine years to the order of the contractor or bearer; that a fund shall be set up into which all gross receipts or revenues from the electric light and power system shall be deposited and from the net balance of which, after operating expenses and any prior deduction required by law shall have been taken out, shall be used for the payment of the coupon revenue certificates; that the municipality shall operate the newly constructed project, but that the construction shall be and remain strictly personal property and be in the ownership of the contractor until the same shall be fully paid for "and in the event that any judgment is taken on account of all or any part of said sums the title * * * shall not pass until such revenue certificates so given, or extensions thereof or judgment taken are fully paid and satisfied." The borough owns and operates a distribution system, built in 1916 under an ordinance then lately adopted, whereby it receives purchased current and delivers the same to consumers. The proceedings out of which the distribution system issued did not include a power plant.

Prosecutor contends that the ordinance under review is invalid because it (1) does not comply with the requirements of chapter 77, *Pamph. L.* 1935, *p.* 186, (2) does not provide for an appropriation to meet the cost of the proposed contract and (3) was not passed pursuant to a referendum. Respondent concedes that the ordinance does not meet these tests but insists that it need not and, further, that the prosecutor, a taxpayer, should not be permitted to prosecute the writ.

Instruments of payment issued under the ordinance would be in writing signed by the municipality and made "payable to the order of the contractor or bearer" at fixed or determinable times. If they should be saved from negotiability by being charged against specified revenues, the scheme nevertheless affects borough finances over a long period of years, anticipates and takes some precaution with respect to law suits and judgments against the borough and diverts from general borough funds the proceeds which accrue from the presently owned distribution system. We are not dealing with an existing fund from non-tax sources as the court was in *Ford* v. *City of Bayonne,* 87 *N. J. L.* 298 (also otherwise distinguishable). Neither are we reviewing an action of a borough in using non-tax funds to accomplish that which it clearly has the right to do.

The financing method, when analyzed, falls little short of a sale, at par and without competitive bidding, of short term four and one-half per cent. interest bearing coupon bonds chargeable against prospective receipts and secured by a trustee's mortgage on the proposed plant. But the 1935 statute applies not only to the issue of bonds. The title is: "An act to authorize and regulate the issuance of bonds and other obligations and the incurring of indebtedness by county, city, borough, town, township, village or any other municipality, other than a school district (Revision of 1935.)" Article I, section 102, gives power to "incur indebtedness." No amount of argument can still the fact that the borough, in contracting for the construction of the generating plant, will incur a debt. The same section further provides that "No * * * municipality shall * * * issue its obligations for the purposes for which this act authorized bonds to be issued except as provided in this act." We take that to be a legislative mandate as to all municipal financing within its purview. The legislature is telling the municipalities of the state that when they wish to build and finance public works they shall do so only when permitted, and in the manner directed, by the statute. It has formulated a broad and comprehensive scheme for uniform municipal financing. The provision in the ordinance under review is that payment shall be made

by "coupon revenue certificates of the municipality." However limited in security or special in form, these certificates will be obligations to pay, and they will be obligations—to use the words of the ordinance—"of the municipality." Section 1101, according to its terms, applies to all obligations issued after the effective date of the statute for purposes for which obligations may be issued thereunder, subject to certain named exceptions which are not pertinent to our inquiry. The building of an electric light or power system is one of the purposes for which obligations may be issued thereunder. Article III, section 301 (g). We find that the proposed notes are obligations of the borough within the meaning of the statute.

It is not enough, it seems to us, that the respondent seeks to fasten, and we shall assume has fastened, upon a designated fund to be used in making the payments. That fund is wholly *in futuro*. What it will amount to, or whether indeed there will be an appreciable net surplus, is not disclosed. Perhaps no one knows. Here we have a municipality, staggering under a debt load that amounts to more than one-quarter of its average ratables, determining by the unsupported ordinance of its council to construct a utility plant without disclosing or fixing a limitation of costs, without regard to the debt limit ordained by the legislature, without providing a fund other than expected net proceeds over a period of nine years from an untried venture, exposing itself to the high construction costs which such a financial scheme will likely invite, resorting to the artifice of denominating the plant personal property and placing the ownership thereof in another over an uncertain period of years, and without submitting the plan to a referendum of its voters. The course appears to be quite divergent from the statutory scheme and to be an instance of what the legislature sought to avoid by setting up a uniform and compulsory procedure.

We must conclude that the bond act applies to the issuing of obligations by the respondent in payment of the construction of its proposed works. Admittedly, the ordinance, far from complying with that statute, is wholly in disregard thereof. The ordinance was passed without the filing of a

supplemental debt statement and at a time when the percentage of net debt to average assessed valuations was at least twenty-six per centum as against seven per centum permitted by the statute. The total amount of notes authorized was not stated. We find no statutory authority for omitting to file a debt statement preliminary to the final passage of an ordinance for the financing of a utility simply because it is anticipated that the enterprise will be self-liquidating. Chapter 210, *Pamph. L.* 1910, cited by the respondent, clearly does not give that authority. If the bonding act controls then the foregoing data, shown on a supplemental debt statement, would have stopped the passage of a financing ordinance. Article II, section 207.

We are not persuaded by respondent's contention that the construction of a generating plant and the manufacture of electricity constitute merely an addition to or extension of purchased current and, therefore, are only incidental to an existing municipal activity, and that the ordinance of 1916, notwithstanding all of the restrictive and directive municipal legislation passed since that time, may be made the authority for the new enterprise. The borough now proposes what it has never before proposed, viz., to construct works for the manufacture of electricity for light, heat and power. The Municipalities act provides in article XXXIII, section 3 (2 *Cum. Supp. Comp. Stat.*, § *136-3303), that "no municipality shall * * * construct any light, heat or power plant or works until a majority of the legal voters * * * shall vote so to do." A popular vote taken in 1915 on the issuing of bonds for the construction of a distribution system does not constitute a compliance with that statutory requirement.

Our conclusions in the respects mentioned make it unnecessary for us to determine whether article XI, section 6, of the Municipalities act, as amended by chapter 163 (*Pamph. L.* 1918; 2 *Cum. Supp. Comp. Stat.*, § *136-1106), applies. We express the view, however, that the facts of the case differ fundamentally from those present in either *Viracola* v. *Long Branch*, 1 *N. J. Mis. R.* 200, or *Child* v. *Newark*, 8 *N. J. Mis. R.* 597.

If our conception of the law on the merits is sound, it is manifest that the questions are appropriately raised by a taxpayer under a writ of *certiorari*.

We consider that the ordinance under review is invalid and should be set aside. Costs to the prosecutor.