BERTRAM DeBOW, PROSECUTOR, v. THE TOWNSHIP OF LAKEWOOD ET AL., RESPONDENTS.

Submitted January 19, 1944—Decided March 18, 1944.

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutor, *J. Elmer Matthews* and *Albert Larrabee* (*Robert A. Lederer,* of counsel).

For the respondent Township of Lakewood, *Percy Camp.*

For the respondent Victor Samuel, *Vincent S. Haneman.*

The opinion of the court was delivered by

PERSKIE, J. The question requiring decision in this case is the validity *vel non* of a resolution passed by the Township Committee of Lakewood on November 24th, 1942, and of the contract executed the same day pursuant to said resolution, concerning the employment of an attorney-at-law to liquidate certain tax certificates held by the township.

In order better to understand the question requiring decision, it is necessary to refer to the meeting of the Township Committee of the Township of Lakewood, New Jersey, held on November 9th, 1942. On that day, a resolution was passed authorizing the proper officers of the township to execute a contract, in form submitted, with Attorney Victor Samuel (hereafter referred to as respondent), under the terms of which respondent was to liquidate, through foreclosure or otherwise, some 337 tax liens held and owned by the township. In pursuance of that resolution the contract was executed, on November 9th, 1942, between the township and respondent. By the terms of this contract, so far as is here

pertinent, respondent agreed to perform the necessary legal services incident to the liquidations, whether through payment, or through the vesting of title in the township, of the 337 tax liens held and owned by the township.

The tax liens were divided into three categories and an agreed price was to be paid respondent for his handling of each lien, the price being dependent upon the category into which each respective lien was placed.

For his professional services, respondent was to be paid in the manner, though not in the words, prescribed by the statute (within the "purview" of which the contract was concededly "drawn"), namely, "in all or in part, from the funds derived, or to be derived from the redemption of liened property or the sale of foreclosed property * * *." *R. S.* 40:50–6, as amended by *Pamph. L.* 1941, *ch.* 189, *p.* 576, § 1. Additionally, the township agreed to appropriate, commencing with the year 1943, $5,000 per annum "for the purposes of this contract," until the work to be done thereunder shall have been completed, and that in the event there were insufficient funds available to pay respondent from "liquidation of tax liens" and from the "proceeds of sale of real estate" then the township should cause to be appropriated in its fiscal budget for the year 1948 an amount sufficient to pay the balance due respondent. This contract was "not to become effective" until it had been "approved" as provided by the statute, by the "Department of Local Government." (*R. S.* 40:50–6, as amended.)

The contract was forwarded to the Department of Local Government for its approval. That body met to consider the contract on November 16th, 1942. Opposition to its approval of the contract was voiced at this meeting by the single township committeeman who had voted against the passage of the resolution of November 9th, 1942. The Department of Local Government held the matter under advisement.

On November 24th, 1942, prior to any decision by the Department of Local Government, the Township Committee passed a resolution rescinding the contract of November 9th, 1942, and accepting respondent's release in connection there-

with. A copy of this resolution was ordered to be forwarded, and was forwarded, to the Department of Local Government.

On the same day, November 24th, 1942, another resolution was passed by a three to one vote (there was a vacancy in the Township Committee) authorizing the execution by the township of another contract, in form submitted, with respondent. That contract was executed. It was practically identical with the contract of November 9th, 1942. It differed chiefly as to the manner in which respondent was to be paid for his services. He was not to be paid out of a fund as prescribed by *R. S.* 40:50–6, as amended, but rather was he to be paid by means of an immediate down payment of $3,500 out of the then unexpended legally appropriated balance in the township's "Legal Tax Foreclosure Account," and by means of future annual appropriations of "not less than $5,000 per annum." Any balance due respondent at the end of 1947 was to be appropriated in the 1948 budget. This contract was, of course, not submitted to the Department of Local Government. The $3,500 was paid respondent, who has since rendered some services in pursuance of his challenged contract, and the amount which he has since disbursed and for which he has incurred obligations totals about one-third of the down payment.

As a result of an election held in the township in November of 1942, the personnel of the Township Committee changed. That committee, on January 1st, 1943, passed a resolution which, among other things, stated that the township is of the "opinion" that it was "not legally bound" by the contract (November 24th, 1942) with respondent, that it was "not for the best interests" of the township and that the "moneys and certificates of tax sale" in respondent's possession were "unlawfully and illegally" transferred to him.

Prosecutor, a citizen, resident and taxpayer of the Township of Lakewood, was allowed a writ of *certiorari* which brings up for review the resolution and contract of November 24th, 1942.

Counsel for neither side participated in the taking of depositions by his adversary.

1. We perceive no legal infirmity in the resolution or in the contract. The township is expressly authorized by statute to contract, among other things, "* * * for services for a period exceeding the fiscal year in which such contract is made, when otherwise provided by law." *R. S.* 40:2–29. And there is, of course, ample authority, under the circumstances exhibited, for the appointment of a special counsel. *Cf. Hoxsey* v. *City of Paterson*, 40 *N. J. L.* 186; *Child* v. *Board of Commissioners of Newark*, 8 *N. J. Mis. R.* 597; 151 *Atl. Rep.* 203; *Osborne* v. *Murphy*, 119 *N. J. L.* 65, 67; 194 *Atl. Rep.* 551.

The typical cases of *Humphreys* v. *Bayonne*, 55 *N. J. L.* 241; 26 *Atl. Rep.* 81; *Hurley* v. *Trenton*, 66 *N. J. L.* 538; 49 *Atl. Rep.* 578; *affirmed*, 67 *N. J. L.* 350; 51 *Atl. Rep.* 1109; *Jersey Central Power and Light Co.* v. *Borough of Seaside Heights*, 117 *N. J. L.* 253; 187 *Atl. Rep.* 533, and *Frank Grad & Sons, Inc.*, v. *Newark*, 118 *N. J. L.* 376; 193 *Atl. Rep.* 177, urged to the contrary are clearly distinguishable on the facts of each case.

2. Nor are we able to discern any failure to comply with the necessary formalities. It was not necessary, as it is contended, either for an ordinance to have been enacted or for the agreement to have been submitted to the Department of Local Government. For the statute urged as applicable by prosecutor (*R. S.* 40:50–6, as amended) requires the passage of an ordinance only when the cost of the contract was not included in the budget for the year. In this case the budget of the township contained a legally appropriated and unexpended balance in the tax foreclosure account sufficient to meet that which became due during the first year of the agreement. That is sufficient. *Viracola* v. *Long Branch*, 1 *N. J. Mis. R.* 200; 142 *Atl. Rep.* 252. And the submission of the agreement to the Department of Local Government would have been necessary only if respondent was to have been paid for his services from the avails of either liquidation of the tax liens or sales of the property. See *R. S.* 40:50–6, as amended. Here payment was not so provided.

3. Nor are we able to discern any applicability of the holding in the line of cases of which *Skladzien* v. *Board of Educa-*

*lion of Bayonne*, 12 *N. J. Mis. R.* 602; 173 *Atl. Rep.* 600; *affirmed*, 115 *N. J. L.* 203; 178 *Atl. Rep.* 793, is typical, to the case at hand. The township here was obliged to resort to legal proceedings to convert its tax liens into cash if possible. We need hardly labor the point that it must necessarily take more than a year to conclude the necessary proceedings to foreclose 337 tax lien certificates. Clearly it would have been absurd to have included the total estimated costs (about $30,000) in the budget of the year when the contract was executed. There could have been no point in appropriating $30,000 and thus raise the tax rate accordingly when there was no need for any such sum that year. The money so needed was on hand. As for moneys which thereafter might be needed annually, the township, as we have seen, agreed annually to appropriate about one-sixth of the estimated total costs out of which respondent was to be paid. This would appear to be a practical and business-like arrangement. It does not unnecessarily add in one tax year to the none too light burdens of the taxpayer. It spreads that burden. Comparable contractual arrangements have been held free from illegality. Compare unreported cases of *Hoebel* v. *Mayor and Council of the Borough of Fort Lee et al.* (*opinion by Bodine, J.*); *Kluj* v. *The Township Committee of the Township of Woodbridge et al.* (*opinion by Case, J.*), and *Moorhouse* v. *Wellgoos et al* (*opinion by Donges, J.*). It will not do to say, as it is said, that the present committeemen are of the "opinion" that the contract is not for the best interests of the township. That is beside the point. Especially is that so when, as in the case at bar, there is no proof of personal interests, fraud, corruption or bad faith on the part of the committeemen who charged with responsibility in the premises apparently were of the opinion that the contract was for the best interests of the township.

We have carefully examined all other points argued and find them to be without merit.

Accordingly, the writ is dismissed, with costs.