VICTOR SAMUEL, PROSECUTOR-RESPONDENT, v. BOR-OUGH OF SOUTH PLAINFIELD, A MUNICIPAL CORPO-RATION, AND CHARLES CARONE, CLERK OF THE BOROUGH OF SOUTH PLAINFIELD, RESPONDENTS-APPELLANTS.

Argued May 21, 1947—Decided September 12, 1947.

For the prosecutor-respondent, *Fredrick J. Wallzinger* and *Victor Samuel, pro se.*

For the respondents-appellants, *Edward J. Santoro* (*John T. Keefe,* of counsel).

The opinion of the court was delivered by

WACHENFELD, J. This appeal is from the determination of the Supreme Court that an agreement executed pursuant to a resolution of December 4th, 1946, of the Common Council of the Borough °of South Plainfield approving and authorizing the execution of a contract with Victor Samuel for the liquidation of approximately one thousand tax title liens held by the borough constituted a valid and enforceable contract and that a subsequent resolution of January 2d, 1947, repealing and rescinding the former was void.

Victor Samuel is an attorney-at-law of the State of New Jersey. In November, 1946, the Borough of South Plainfield held 1,029 tax title liens on lands within its municipal limits. The governing body of the municipality consisted of six councilmen and a mayor. On November 5th, 1946, three new members were elected to the council, resulting in changed control of the council from one political party to another, effective January 1st, 1947.

On November 20th, 1946, the councilmen, voting four to two, by resolution approved a form of contract submitted by Samuel in which he was to liquidate the tax title liens, and at the same time the resolution authorized the mayor and the clerk to execute and deliver said contract to Samuel. The mayor vetoed the resolution on several grounds, one of which was that the Department of Local Government had not first approved the contract. On December 4th, 1946, the same resolution was reconsidered, and despite public opposition expressed at the hearing, was passed over the mayor's veto. The newly constituted council on January 2d, 1947, by a four to two vote, rescinded the resolution of December 4th and directed Samuel to return the tax lien certificates which had been placed in his possession.

To pay Samuel under the terms of the proposed agreement the borough would become financially obligated to expend the sum of $45,000, to be met by annual appropriations for the years 1947, 1948 and 1949 in the amount of $4,000 each year, and the balance owing at the end of the fiscal year 1949 was to be paid off in three annual payments in the years 1950,

1951 and 1952 by making suitable appropriations in each of said years. No payment was to be made for the year 1946.

The proposed agreement in its final paragraph recites the affixation of the corporate seal of the borough and the signature of the mayor, but neither was ever placed on or affixed to the document. Signatures of the borough clerk, Victor Samuel and four members of the council as witnesses appear on the draft. The agreement was not submitted to the Department of Local Government for approval.

The Supreme Court determined that after the resolution of the municipality on December 4th, 1946, and the execution of the agreement by Samuel and the four councilmen, a binding contract was formed, evidenced by the delivery of the tax sale certificates to Samuel to enable him to carry out the contract. Relying on *DeBow* v. *Lakewood,* 131 *N. J. L.* 291, the court therefore held that the resolution of January 2d, 1947, was invalid and of no effect.

The resolution of November 20th, 1946, approving the draft agreement submitted by Samuel was a mere authorization to the mayor and borough clerk to execute, seal and deliver the proposed form of contract on behalf of the municipality. That resolution states in part:

"* * * the agreement proposed be and the same is hereby accepted and the Chairman [mayor] and Borough Clerk be and they are hereby authorized and directed to execute and deliver said contract to said Victor Samuel, and said Victor Samuel is hereby authorized and directed to enter into the performance of the same."

The agreement itself recites and is drafted for the signature of the mayor, to be attested by the borough clerk. Samuel prepared the agreement and both parties evidently contemplated the formal execution of the contract before binding obligations were to arise.

After the veto by the mayor a second resolution was passed adopting the original resolution. This did not change the intent of the parties since it was still contemplated by the resolution that the terms of the agreement be reduced to writing before the bargain should be considered complete. The signatures of the borough clerk in attestation and the council-

men as witnesses appear in the contract but that of the mayor is conspicuously omitted. The court below erred in determining that constituted a valid execution of the contract. In fact, the draft agreement was not executed in conformity with its own provisions or that of the municipal resolutions and consequently a binding contract never arose on the part of the municipality. *Hudson* v. *Atlantic City,* 103 *N. J. L.* 121.

This conclusion is consistent with the decision in *Peejay Corp.* v. *Newark,* 136 *N. J. Eq.* 31. There the resolution recited the approval of, and was signed by, all the commissioners, including the officer authorized to act on behalf of the city. The intention of the board of commissioners was to enter a binding contract upon passage of its resolution of approval.

Here the agreement is unenforceable for the additional reason that *R. S.* 40:2–29 and 40:50–6 have not been complied with. The former section provides that except for emergency and temporary appropriations, no municipality may incur any liability or enter any contract which by its terms involves the expenditure of money for any purpose for which no appropriation is provided. Any contract made in violation thereof is declared void, but contracts for services for a period exceeding the fiscal year in which such contract is made "when otherwise provided by law" are excluded from that prohibition. *R. S.* 40:50–6 bars municipalities from entering any contract, "the cost of which is to be met by funds not included in the budget of appropriations for the year, unless prior thereto there shall have been regularly adopted by the governing body an ordinance authorizing an appropriation sufficient to meet the cost of carrying out the provisions of the contract." Certain exceptions are set forth but none are applicable to this case.

By these two sections the municipal expenditure of money pursuant to any contract must be provided for by budget or authorized by ordinance. In either case, hasty or ill-considered action is avoided by the requirement of notice by publication. *R. S.* 40:2–6, 7; 40:49–2. As explained in *Murphy* v. *West New York,* 132 *N. J. L.* 595; 597:

"These [*R. S.* 40:2–29 and 40:50–6] are peremptory legislative mandates designed to incorporate sound business principles and practices into the fabric of the local economy, with particular reference to the avoidance of waste, extravagance and ill-considered spending, and thus to safeguard the interests of those laden with the tax burden and otherwise to serve the common good; and it is axiomatic that they cannot be evaded by any pretense or device whatsoever. * * * Though not an insurance against local maladministration, action by ordinance is a reflective process that also affords an opportunity for the expression of public opinion; and this is manifestly the rationale of the statutory provisions under consideration."

Respondent relies upon *DeBow* v. *Lakewood Township, supra,* and *Viracola* v. *Long Branch,* 1 *N. J. Mis. R.* 200. The rule as there determined does not apply here as no budget appropriation was made in the year in which the contract was formed. Where the proposed contract with a municipality does not contemplate annual appropriations until the year following the execution of the contract, either the cost of the contract must be included in the budget of appropriations for the year in which the contract is entered or an ordinance must be adopted authorizing the necessary appropriations.

The failure of the municipal council to comply with either *R. S.* 40:2–29 or 40:50–6 renders the agreement under review null and void. The rescinding resolution of January 2d, 1947, is accordingly declared valid.

Judgment reversed.

*For affirmance*—HEHER, J. 1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, BODINE, DONGES, WACHENFELD, EASTWOOD, BURLING, WELLS, DILL, FREUND, McLEAN, JJ. 11.

*For reversal, not on opinion*—McGEEHAN, J. 1.