70 N.J. Super. 293 (1961)
175 A.2d 267
405 MONROE CORP., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
CITY OF ASBURY PARK, A MUNICIPAL CORPORATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided September 13, 1961.
*295 Messrs. Stout & O'Hagan (Mr. William J. O'Hagan, appearing), attorneys for plaintiff (Mr. Max Brustin, of counsel).
Messrs. Durand, Ivins & Carton (Mr. Robert V. Carton, appearing), attorneys for defendant (Mr. Ascenzio R. Albarelli, of counsel).
LEONARD J.S.C.
This is a Chancery proceeding to specifically enforce a certain written agreement between the parties hereto, or in the alternative, in the event said agreement is not so enforced, then for the recovery of damages by the plaintiff.
This matter was tried for 16 days before Judge Lester A. Drenk but was not determined by him due to his untimely and unfortunate demise. Thereafter, it was stipulated by *296 counsel that this matter would be determined by me upon the transcript. This has been read and digested.
The basic facts are as follows: Prior to the year 1954, plaintiff owned a certain "ramp garage" located in the City of Asbury Park. This building was then constructed as a typical ramp type parking garage with seven levels of parking in addition to roof parking. At the time the defendant city had problems connected with public parking, police parking, and the condition of its jail. Negotiations were then commenced the latter part of 1954 or the early part of 1955 between the plaintiff and the city for the leasing of this building; the plaintiff to make certain improvements and renovations thereon in accordance with mutually approved plans and specifications. After many conferences an ordinance authorizing the leasing thereof was introduced and passed on first reading February 18, 1956, at a meeting of the City Council of the City of Asbury Park. One or more public hearings were held by the city council; the passage of said ordinance was postponed by it from time to time while it considered, not alone this proposition, but other suggested buildings. Finally, on June 26, 1956 the ordinance was approved, being passed on second and third reading. Thereafter, on December 31, 1956 the written agreement involved herein was entered into between the parties. The agreement by its own terms was designated "this indenture of lease," and provided for a 25-year term in addition to other pertinent provisions which will be discussed hereinafter.
Plaintiff commenced its remodeling and renovations in the first part of 1957 and terminated the same in March 1958. On the 25th day of that month a letter was written to the mayor and city council of defendant advising them that said building was fully completed in accordance with said agreement and the approved plans and specifications. To this letter the city manager, Mr. Lee, replied on April 8, 1958 stating that said building was not ready for acceptance. One of the controversial issues involved herein is whether or not plaintiff complied with said approved plans and specifications. *297 Much occurred between the parties on this score. However, I will not now discuss this phase of the facts. Suffice it to say the city did not accept the building; hence this litigation.
The city contends that while the agreement entered into between the parties purports to be a lease, it was in reality an installment purchase agreement and was therefore ultra vires and void for the following reasons:
1. The city being under the control of the Municipal Finance Commission, no assent in writing was first secured from said Commission therefor.
2. Said agreement violated the statutory limitation upon the municipal debts.
3. No prior appropriation had been made by the city for said agreement.
Thus, the primary question to be determined is whether the agreement of December 31, 1956 was a lease or, on the other hand, an installment contract of purchase or purchase agreement.
The fact that the parties hereto designated the agreement as "this indenture of lease" is not conclusive. The label which the parties give to a transaction does not determine its character. Shapiro v. Marzigliano, 39 N.J. Super. 61 (App. Div. 1956). Equity looks at the substance, not merely the outward form. Stockton v. Central R.R. Co., 50 N.J. Eq. 52 (N.J. Ch. 1893); DeLorenzo v. City of Hackensack, 9 N.J. 379 (1952); McCutcheon v. State Building Authority, 13 N.J. 46 (1953).
Looking through the form of agreement involved herein and looking at its substance, this court finds that the agreement, Ex. P-1, contains the following provisions:
"1. The lessee shall pay the annual rent of $17,500 per annum, payable in equal monthly installments of $1,458.33 each on the first of each and every month during the term, together with additional rent as hereinafter provided.
2. The lessee agrees to bear, pay and discharge, in the name of the lessor, in addition to the said rent above reserved, without deduction *298 or abatement for any cause whatsoever, during each year of said term, including the year 1956, all taxes, assessments, rates and charges.
3. The lessee, in addition to the rent above reserved, agrees to bear, pay and discharge, promptly when due all water rents, sewer charges, duties, impositions, license or permit fees, charges for public utilities of any kind.
4. The lessor covenants and agrees to make such alterations, improvements and repairs to the building standing upon the demised premises in accordance with the plans and specification of Edward M. Annitto, dated January 27, 1956, approved by the lessee, provided, however, that upon the completion of such alterations, improvements, and repairs, and their acceptance by the lessee, thenceforth the obligation to maintain said building in a state of good repair shall be upon the lessee at its own cost and expense.

* * * * * * * *
7. The lessee shall at all times, throughout the term of this lease, insure all buildings and improvements in the leased premises for the full insurable value thereof, against loss or damage to said buildings by fire, windstorm, tornado * * * and shall deliver policies covering such insurance with the lessor as a named assured therein to the mortgagee, if any, and copies of such policies to the lessor, and shall pay the premium for such insurance before the expiration of said policies.
8. Should the demised premises be damaged by fire, tornado, windstorm, or any other hazard, the insurance monies collected, however payable, shall be applied in accordance with the terms of the mortgage now on said premises, or that may hereafter be placed thereon. Should such insurance monies come into the hands of either the lessor or the lessee, the same shall be applied in payment of the cost of repairing such damage * * *. It is further agreed by the parties hereto that should the demised premises be partially destroyed by fire and should the mortgagee require that the proceeds of said insurance be applied towards the payment or satisfaction of the mortgage, the lessee shall have the right to substitute a new mortgage on the demised premises to the extent of the unpaid balance of principal due at the time of such damage.
9. This lease shall be subject and subordinate to any mortgage, now or hereafter to be placed on said premises * * * and provided further that any mortgage that may hereafter be placed shall by its terms be a self-reduction mortgage which will be fully paid before the expiration date of this lease and provided further that the annual payments of interest and amortization shall not exceed the sum of $17,500.
10. It is further covenanted and agreed by the parties hereto that at the end of this lease, provided the lessee has fully complied with all the terms, conditions, covenants and obligations thereof for the full period of its 25 year term, and in consideration thereof and in *299 further consideration of one dollar, title to the demised premises and the improvements thereon shall vest in the lessee and thereupon lessor shall execute for recordation such instrument or instruments as reasonably shall be required by the lessee in order to convey clear title of said demised premises in the lessee.

* * * * * * * *
12. It is covenanted and agreed, that no damage to or desruction of any of the buildings or improvements that may be erected or placed upon the demised premises, by fire or otherwise, shall be taken to entitle the lessee to surrender the demised premises nor have the effect of terminating this lease; nor shall there be any abatement, suspension or cessation of the payment of the reserved rent and other charges by reason thereof.

* * * * * * * *
19. Lessor warrants and represents that it is the owner in fee simple of the premises herein demised and that said premises are free and clear of all liens and encumbrances except a first mortgage in the sum of $95,000; and lessor warrants and covenants that it will as hereinbefore provided, at the end of the term of this lease, by deed of general warranty, make, execute and deliver to the lessee, convey a good, indefeasible title in said premises to lessee, free and clear of all liens and encumbrances." (Emphasis added)
The question whether this type of agreement is to be considered as a lease or a purchase agreement, has been before many of the courts throughout our country. While at first blush these decisions appear to be inconsistent one with the other, further research indicates that there have been established certain fixed rules and legal doctrines; they are as follows:
"Where a so-called lease is in fact intended as a lease, and the rentals are in fact such, rather than payments on the purchase price, the courts without exception, hold that such a lease of property by a municipality, with an option to purchase the same at a fixed price in addition to the rentals, does not create an indebtedness or liability within the meaning of a constitutional or statutory limitation of indebtedness. Some of the cases have reached this conclusion even where the rentals paid are to be applied or credited on the amount of the purchase price in the event the municipality elects to exercise the option to purchase. In a few instances it has been applied although the rentals were sufficient to cover the entire purchase price without the payment of any further sum. On the other hand, where the rentals are in fact installment payments on the purchase price, the transaction clearly should be treated as a purchase, rather than as a lease, and is not entitled to the protection accorded bona *300 fide rentals payable periodically which do not become due until earned, and which therefore do not constitute a present indebtedness in the aggregate. A contract which, although denominated and purporting to be a lease with option to purchase, is in fact a contract of purchase by payments in installments, has usually been treated as a contract of purchase rather than as a lease. According to the great weight of authority the fact that the so-called rentals are sufficient if paid throughout the term of the lease, to cover the entire purchase price, and to enable the municipality to acquire the property without further payment, renders the contract one of purchase rather than lease, and gives rise to an indebtedness, within the meaning of a constitutional or a statutory debt limitation." 38 Amer. Juris. ¶ 467, p. 149; 71 A.L.R. 1318, 1326 (1931).
"The conclusions drawn from the cases in the original annotation are generally supported by the subsequent decisions set out in the foregoing subdivisions." 145 A.L.R. 1362, 1367 (1943).
One of the pertinent distinctions to be noted is whether the agreement on the one hand contains an option giving the municipality the privilege to acquire title at the end of the term or, on the other hand, the agreement provides that the municipality is legally bound to accept title at the end of the term. The theory of this distinction is that the option only imposes a contingent future liability and does not create an indebtedness before the happening of the contingency, at least where the arising of the contingency is solely within the control of the municipality and can occur only by its subsequent choice voluntarily made. 64 C.J.S. Municipal Corporations ¶ 1850, p. 368; Vande-grift v. Riley, 16 P.2d 734 (Cal. Sup. Ct. 1932).
In Protsman v. Jefferson-Craig Consol. School Corp., etc., 231 Ind. 527, 109 N.E.2d 889, 890 (Sup. Ct. 1953), cited by plaintiff, the agreement provided an option to purchase on any rental date. It further provided: "Nothing herein contained shall be construed to provide the Lessee shall be under any obligation to purchase demised premises." In a later case, Book v. Indianapolis-Marion Bldg. Author., 234 Ind. 250, 126 N.E.2d 5, 10 (Sup. Ct. 1955), the court said:
"Under said contract the city is under no obligation whatever * * * to purchase the same when erected. If it should attempt to exercise its option to purchase said building but cannot do so without *301 violating the constitutional limitations as to becoming indebted, it may be enjoined from exercising such option [at that time]." (Emphasis added)
Kelley v. Earle, 325 Pa. 337, 190 A. 140 (Sup. Ct. 1937) is pertinent. In McCutcheon, supra, 13 N.J., at p. 64, our Supreme Court discussed this Pennsylvania case:
"In Kelley v. Earle, 325 Pa. 337, 190 A. 140, 146 (Sup. Ct. 1937), the court conceded that if the transaction constituted `an outright purchase of property to be paid for in the future, it would undoubtedly be within the constitutional objection, but it is not a purchase nor does it have the attributes of a purchase.' This is the essential difference between that case and this. There, after an earlier holding that there was a sale and not a lease (320 Pa. 449, 182 A. 501), the contrary view was reached on the basis of `new and additional facts'  these in particular: * * * the lease considered on the earlier presentation of the case provided that `at the end of a definite period, upon compliance with the contract, the property leased was to be deeded to the Commonwealth,' and thus there was `a sale (and) not a lease,' while the instrument under review on the hearing to open the decree `is a straight lease for a recurring necessity'; the `land leased is not deeded to the Commonwealth; it is still held by the Authority, an independent public corporation,' and there was not `the outright purchase of an improvement, but a lease of an improvement on the payment of a moderate annual rental,' and `no title under the leases or agreements passes to the Commonwealth,' but `remains with the Authority.'" (Emphasis added)
This distinction between the passing of title and the nonpassing is well illustrated in this case. In the dissenting opinion of McCutcheon, supra, 13 N.J., p. 76, written by Justice Jacobs and joined in by Justice Brennan, in referring to Kelley v. Earle, supra, it is stated: "The leases were to be for 30-year terms without any express provisions for any conveyance to the State at their expiration." (Emphasis added)
I find as a fact that the agreement herein provided for automatic vesting of title in the municipality at the end of its term. The municipality was obligated to accept title and had no option with regard thereto. (Ex. P-1, ¶ 10, supra.) Title is warranted by the lessor at the beginning and at the end of the term. (Ex. P-1, ¶ 19, supra.)
*302 Plaintiff contends that this agreement was a lease because the annual rental to be paid under the agreement by the municipality was less than the annual rental value and therefore was rent and not payment on account of the purchase price. The agreement required the city to pay $17,500 annually plus taxes, property insurance, maintenance, and other charges as I have heretofore discussed. Plaintiff offered testimony of two witnesses who testified without contradiction that the rental value of the premises was $19,100, the second witness, $19,500, per year net; meaning the municipality is to pay in addition thereto the taxes, property insurance, and maintenance as required by the agreement herein.
Plaintiff argues on this score that the cases of DeLorenzo v. City of Hackensack, supra, and McCutcheon v. State Building Authority, supra, stand for the proposition, among other things, "that a true lease rental is compensation for the use of the property, not the consideration price for its purchase." Plaintiff therefore contends that his proof of a higher rental value than the municipality was obligated to pay under the agreement, is the touchstone of the distinction between a lease and an agreement of sale. May I humbly suggest that plaintiff misconceives the purport of the quoted language. This language does not require an inquiry into the fair rental value. Rather, it requires an inquiry into whether or not the so-called rental is compensation for the use of the property, or, on the other hand, the consideration price for its purchase.
In the instant case no other consideration except a nominal one dollar was payable for the vesting of title; the consideration, the price for conveyance, was the sum total of the so-called rent payable, plus the other charges hereinbefore mentioned. The so-called rent payments are sufficient herein to cover the entire purchase price. Opinion of The Justices, 146 Me. 183, 79 A.2d 753 (Sup. Jud. Ct. 1951). The court therein said:
*303 "The so-called rental is not true rent, to wit, payment for the use of property. The total amount of so-called rental is the purchase price the State is to pay for the property. When paid in full it will liquidate the entire indebtedness of the Building Authority."
The court in McCutcheon, supra, 13 N.J., at pp. 59 and 60, said:
"While the payments thus made by the State through its governmental agency take the form of `rentals,' they are in substance and effect the purchase price of the property, for they are to be sufficient in amount to defray the Authority's operating expenses and in the end to liquidate the principal of the bonds and the interest accruing thereon. * * * A true lease rental is compensation for the use of the property, not the consideration price for its purchase."
This alleged criterion might become important in a situation where first there was an option to purchase on the part of the municipality, and second, the option provided for payment of additional purchase price or credit for the so-called rental paid on account of the purchase price during the term of the agreement. In that event an inquiry would be proper as to whether the payments of the so-called rent were fair and reasonable for use of the property or, on the other hand, were truly on account of the consideration price or sales price. Protsman v. Jefferson, supra. However, as previously stated, I do not believe that said inquiry is proper where, as in the case at bar, first there is no option, but the municipality is bound to accept title and, second, the consideration price for conveyance is the sum total of all the rent payments and no additional purchase price is to be paid.
There are other pertinent provisions of this agreement that cannot be overlooked. The lessee is to pay all the fire insurance premiums and proceeds of said policies, in the event of fire, are first to be used to pay off the mortgage. (Ex. P-1, ¶¶ 7 and 11, supra.) In the event the building is completely destroyed by fire the lease is not terminated, nor would there be any abatement of rent in such event. (Ex. P-1, ¶ 12.) These provisions negate a lease and establish *304 a conveyance. In Booth v. Owensboro, 274 Ky. 325, 118 S.W.2d 684 (Ct. App. 1938) similar provisions in an agreement were construed to give rise to an obligation continuing throughout the term within the debt limitation and the agreement was determined to be a purchase agreement and not a lease.
Based upon the above authorities and the provisions of the agreement as I have discussed them, I do hereby determine that the agreement between plaintiff and the city was a purchase agreement and not a lease and created an indebtedness for the full amount of the so-called rental at the time of its execution. See Read v. Atlantic City, 49 N.J.L. 558 (Sup. Ct. 1887).
Having made this determination, the next inquiry must be  did said agreement violate any of our state statutes which in any manner limit, control or regulate the activities of municipalities?
It was uncontrovertedly testified to by the city clerk and, therefore, I find as a fact that in December 1956, and for some time prior thereto, the city was under the control of the Municipal Finance Commission. R.S. 52:27-22 provides as follows:
"In order to conserve the financial resources of the municipality, its governing body, without the assent in writing of the commission, shall pass no ordinances or resolutions authorizing the issuance of notes or bonds of any kind or character or creating any obligation or indebtedness of the municipality, except tax anticipation or tax revenue notes or bonds for the current year. Nor shall such governing body, without like consent, include in any annual budget or tax ordinance amounts for local expenditures in excess of the like amounts for the preceding annual budget, exclusive of appropriations for the purpose of raising the principal and interest on the public debt." (Emphasis added)
I find as a fact from the evidence in this case that said Commission (the city being under the control thereof) did not assent in writing to the ordinance involved herein authorizing the execution of the agreement. Since I have heretofore determined this agreement was a purchase agreement *305 and created a present obligation and indebtedness of the city, this assent in writing was necessary. I therefore conclude on this point that there was a direct and positive violation of this particular statute.
N.J.S.A. 40:2-29 provides as follows:
"Except as may be otherwise provided in section 40:2-31 of this Title, no officer, board, body or commission shall, during any fiscal year, expend any money (except to pay notes, bonds, or interest thereon), incur any liability or enter into any contract which by its terms involves the expenditure of money:
a. For any purpose for which no appropriation is provided in the budget or by temporary appropriation pursuant to Section 40:2-12 of this Title, or
b. In excess of the amount appropriated for any such purpose.
Any contract, oral or written, made in violation hereof shall be null and void as to the county or municipality, and no moneys shall be paid thereon. * * *"
N.J.S.A. 40:50-6 provides as follows:
"No municipality shall enter into any contract, the cost of which is to be met by funds not included in the budget of appropriations for the year, unless prior thereto there shall have been regularly adopted by the governing body an ordinance authorizing an appropriation sufficient to meet the cost of carrying out the provisions of the contract."
I find as a fact that on February 18, 1956, when the ordinance authorizing this agreement was finally adopted, no appropriation therefor was previously made, nor was there any provision made in the budget therefor. The only appropriation made was a sum of $13,500 for the year 1957, this being less than the annual rent of $17,500. Consistent with my prior determination that a present indebtedness for the whole amount due under the contract was created, I likewise determine that the City Council thereupon incurred a liability or indebtedness for the full amount thereof. There being no appropriation therefor, I conclude on this point that both of these statutes were thereby positively and directly violated.
*306 Having once determined that the agreement was not a lease, the savings provision of N.J.S.A. 40:2-29, wherein it provides:
"* * * Nothing in this section contained, however, shall prevent the making of contracts or the spending of money for capital projects to be financed in whole or in part by the issuance of notes, or bonds, nor the making of contracts of lease * * *."
does not protect this agreement. Likewise, there is no proof before me that the city was going to finance in whole or in part, by the issuance of notes or bonds, this agreement. It being stipulated that the city at the time far exceeded its debt limitation, this contract could not be financed by the issuance of bonds. R.S. 40:1-15. Nor could notes or bonds be issued without the assent in writing of the Local Finance Commission. R.S. 52:27-22.
As previously noted, N.J.S.A. 40:2-29 provides that any contract, oral or written, made in violation thereof shall be null and void to the municipality and no money shall be paid thereon.
Having found that this statute, as well as N.J.S.A. 40:50-6, was positively violated, I, therefore, determine that the agreement herein was null and void.
In Murphy v. West New York, 132 N.J.L. 595 (Sup. Ct. 1944) the court declared invalid an agreement to hire special counsel where there was no appropriation made and the municipality attempted to pay the fee out of current funds.
In Samuel v. South Plainfield, 136 N.J.L. 187 (E. & A. 1947), a municipality contracted with an attorney for his services in regard to the liquidation of tax title liens. The contract was executed pursuant to a municipal resolution. One month later, after a change in administration, the resolution was rescinded and the attorney brought suit. No appropriation had been made in the budget for that year and no ordinance authorizing such an appropriation had been passed. The court, in reversing a lower court determination *307 that the rescinding resolution was improper, held that the contract had been improperly executed and was void by its own terms. The court in so doing stated, 136 N.J.L., at p. 191, that:
"Respondent relies upon Debow v. Lakewood Township, supra [131 N.J.L. 291] and Viracola v. Long Branch, 1 N.J. Misc. 200. The rule as there determined does not apply here as no budget appropriation was made in the year in which the contract was formed. Where the proposed contract with a municipality does not contemplate annual appropriations until the year following the execution of the contract, either the cost of the contract must be included in the budget of appropriations for the year in which the contract is entered or an ordinance must be adopted authorizing the necessary appropriations.
The failure of the municipal council to comply with either R.S. 40:2-29 or 40:50-6 renders the agreement under review null and void."
See also Gavett v. Hoboken, 47 N.J. Super. 596 (Law Div. 1957).
Since I have determined that this agreement is not a lease, the cases cited by the plaintiff, one of which was Block v. Bell Furniture Co., 111 N.J. Eq. 551, 555 (E. & A. 1932), are not applicable.
Plaintiff contends that even though the agreement may be allegedly void for the reasons hereinbefore stated defendant is estopped from raising this issue, i.e., that the agreement is so null and void.
I will not recite in full detail the conduct of the city from the date that it entered into this agreement until the date of the institution of suit by plaintiff. Suffice it to say that during the entire year, from the first part of March 1957, when the renovations were commenced, to the end of March 1958, when plaintiff alleged that they were completed, the city spent all of its time calling upon plaintiff to comply with the plans and specifications and to perform in accordance therewith. There were many inspections by representatives of the city; there were repeated demands by city officials that plaintiff comply with the specifications; *308 there were requests for changes by department heads; there were demands that certain installations be placed in the premises that were not contemplated in the original plans and specifications  all this, on the part of the city, during this year period or longer. During this time the city did not raise the issue that this agreement was null and void. I have no hesitancy in stating that if defendant were a private corporation rather than a municipal one, its conduct would amount to an estoppel. However, being a municipality, the rule as to estoppel is different. The plaintiff contends that there is some misapprehension or confusion in the law of this State in the application of the doctrine of estoppel to municipalities. If any confusion has existed, it has been dissipated by our recent cases. In Bauer v. City of Newark, 7 N.J. 426, 434 (1951), it was held:
"Generally, an ultra vires contract, being void, is not subject to ratification, express or implied. * * * On principle a void contract is not validated by performance. Yet there is a distinction between a purported contract which the municipality is utterly without capacity to make under any and all circumstances and a contract within the general powers of the corporation but void and unenforceable for lack of an appropriation, as in the case at hand, or for nonconformance with a statutory condition precedent, as distinguished from an intra vires contract merely voidable for want of authority or for an irregularity in the exercise of the contractual power. * * * But the distinction has no significance here. The purported contract is rendered null and void by the statute; and the statutory policy may not be set at naught by indirection. The particular ultra vires act can be adopted or ratified only by full compliance with the statutory prerequisites to contractual liability in the first instance."
In Summer Cottagers' Ass'n. of Cape May v. City of Cape May, 19 N.J. 493, 504 (1955), the court said:
"The principle of estoppel in pais is not, for obvious reasons, given the same freedom of application against the public as against private persons. Municipalities, for example, are agencies of government for local administration with enumerated powers, and deviations from the legislative grant must needs have the legal consequences comporting with the declared legislative intention and policy. The essential principle of the policy of estoppel here invoked is that *309 one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct. * * * An estoppel by matter in pais may arise by silence or omission where one is under a duty to speak or act. * * * It has to do with the inducement of conduct to action or nonaction.

* * * * * * * *
There is a distinction between an act utterly beyond the jurisdiction of a municipal corporation and the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional. The former are ultra vires in the primary sense and void; the latter, ultra vires only in a secondary sense which does not preclude ratification or the application of the doctrine of estoppel in the interest of equity and essential justice. * * * But there cannot be such relaxation of the conditions laid down in the grant of the power as to defeat the public policy intended to be served.

* * * * * * * *
While it was the original rule that a contract ultra vires was void ab initio and could not be validated by performance or by the application of the law of estoppel, the rights of persons innocently entering into ultra vires contracts with private corporations came to be recognized in the refusal to apply the doctrine, when invoked for or against a corporation, `where it would defeat the ends of justice or work a legal wrong.' * * * But the opposing public policy cannot be disregarded. The limitations of the power are presumed to be commonly known." (Emphasis added)
This distinction is recognized in 10 McQuillin Municipal Corps., Sec. 29.10, p. 196.
The cases cited on this point by plaintiff to sustain the invocation of the doctrine of estoppel against the city are not on point. Traphagen v. Mayor, etc. of Jersey City, 29 N.J. Eq. 206 (Ch. 1878), aff'd. per curiam 29 N.J. Eq. 650 (E. & A. 1878), was the opposite situation; laches was applied against an individual seeking to enjoin a municipality. Township of Springfield v. Bensley, 19 N.J. Super. 147 (Ch. 1952), involved the validity of the township building inspector's permit. No question was raised therein as to the noncompliance with the zoning ordinance or the building code and no violation of either was charged. Robbins v. Jersey City, 23 N.J. 229 (1957), was a suit brought by a taxpayer and not by the city. It was controlled *310 by the thirty day provision of the Supreme Court Rules (R.R. 4:88-15).
Having previously determined that this agreement is null and void by reason of its violation of positive statutory provisions, I now determine that the city is not estopped to raise the defenses that it has raised herein, and that the doctrine of estoppel is not applicable to it.
Plaintiff finally argues that even assuming that said agreement is void for one or more of the reasons stated, plaintiff is nevertheless entitled to recover on quantum meruit. It alleges the actual cost of the construction work was some $232,546 and seeks recovery of that sum.
Whether, in any event, plaintiff could recover this specific sum is questionable in my mind. This sum represents the fair value of all of the work done in the conversion of the building. There is no question that under the present posture of the case plaintiff will retain the building and will retain the benefits by way of improvement thereto. While the evidence indicates it is presently only a single purpose building, there is testimony that the jail cells and other portions limited to the police department could be removed and that it could be further renovated and used as an office building. I merely make this comment because my conclusion on this point does not make it necessary that I make this specific determination.
The law of this state is settled by Hudson City, etc., Co. v. Jersey City Incinerator Authority, 17 N.J. 297 (1955), wherein Justice Burling, at p. 309, said:
"In summary, we find that the New Jersey law pertinent to this type of case is that where the contract was not within the corporate power, no recovery may be had by the contractor either on express or implied contract; where the Legislature expressly prohibits the incurring of liability on contract or otherwise no recovery may be had either on express or implied contract; but where the power to contract lies within the competence of the municipal corporation and there has been an irregular exercise of that power in good faith, recovery on the quantum meruit may be had although the express contract is void." (Emphasis added)
*311 See also Slurzberg v. Bayonne, 29 N.J. 106 (1959), and Home Owners Construction Co. v. Bor. of Glen Rock, 59 N.J. Super. 519 (App. Div. 1960). The last cited case is similar to the one at bar and Justice Haneman states therein, at p. 530:
"Nor can plaintiff recover on a quantum meruit basis, as sought in the second count, in view of the fact that the Legislature expressly prohibited the incurring of the liability sought to be imposed."
In Bauer v. City of Newark, supra, 7 N.J., at p. 435, the court states:
"The purported contract is rendered null and void by the statute; and the statutory policy may not be set at naught by indirection. The particular ultra vires act can be adopted or ratified only by full compliance with the statutory prerequisites to contractual liability in the first instance. * * * Where an express promise to pay for a service to be performed is ultra vires and void for failure of conformance with statutory restrictions upon the exercise of the contractual power, an implied promise to pay cannot arise from the acceptance of the service. * * * The law will not imply a promise to pay when that course would flout an explicit statutory mandate; and, by the same token, there can be no recovery on a quantum meruit. The law will not thus permit the annulment of the statutory limitation upon the contractual authority of municipalities. Here, it is expressly provided by R.S. 40:2-29, cited supra, that `no moneys shall be paid' on a purported contract thereby made void." (Emphasis added.)
Plaintiff argues that it acted in good faith and therefore should have its recovery on quantum meruit. In spite of the sincere efforts of counsel for the defendant to prove that the plaintiff acted otherwise, I find no proof of this fact. However, under the circumstances herein, the fact that plaintiff so acted does not change the result. I conceive the good faith of the performing party may only be considered if there has been an irregular exercise of power but it cannot be so considered where the Legislature expressly prohibits the incurring of liability on the contract. N.J.S.A. 40:2-29, supra. Such is the situation herein.
*312 I therefore determine that the plaintiff cannot recover on quantum meruit.
The above disposition makes it unnecessary that the court consider the controverted issue of fact as to whether or not the plaintiff complied with the approved plans and specifications.
Judgment may be entered herein in accordance with the above, in favor of the City of Asbury Park and against the plaintiff, 405 Monroe Corporation, for no cause of action.