OPINION

OF THE JUSTICES OF THE SUPREME JUDICIAL COURT
GIVEN UNDER THE PROVISIONS OF SECTION 3
OF ARTICLE VI OF THE CONSTITUTION

\* \* \* \* \*

QUESTIONS PROPOUNDED BY THE SENATE IN AN ORDER
PASSED MARCH 6, 1951, ANSWERED MARCH 13, 1951

SENATE ORDER PROPOUNDING QUESTIONS

STATE OF MAINE

IN SENATE

March 6, 1951

*To the Honorable Justices of the Supreme Judicial Court:*

WHEREAS, it appears to the Senate of the Ninety-Fifth Legislature that the following are important questions of law and the occasion a solemn one; and

WHEREAS, there is pending before said Ninety-Fifth Legislature a resolve entitled, "Resolve, Appropriating Moneys for the Leasing, Operation and Maintenance of a State Office Building in the City of Augusta" (a copy of which resolve marked Legislative Document No. 547 is herewith enclosed and made a part hereof) which would appropriate revenues for the purposes of leasing, operating and maintaining an office building to be constructed by the Maine State Office Building Authority under the provisions of chapter 76 of the private and special laws of 1941; and

WHEREAS, under the terms of chapter 76 of the private and special laws of 1941, as amended by chapter 94 of the private and special laws of 1943, chapter 51 of the private and special laws of 1945 and chapter 128 of the private and special laws of 1947, there is created a so-called body corporate and politic to be known as the Maine State Office Build-

ing Authority with power to issue notes, bonds, or other evidences of indebtedness and to secure the payment of the same by a mortgage of the proposed building contemplated by said laws together with land owned by said Authority and also to pledge revenue derived therefrom, also to assign any leasehold contract it may have with the State of Maine to secure payment thereof; and

WHEREAS, it appears that the contemplated project is not a self-liquidating one except as the Ninety-Fifth Legislature and successive Legislatures thereafter appropriate revenues for the use and occupation of said contemplated building or buildings; and

WHEREAS, it is important that the Legislature be informed as to the constitutional validity of an appropriation as provided in the aforementioned resolve now pending before it;

NOW, THEREFORE, BE IT

ORDERED: That the Justices of the Supreme Judicial Court are hereby requested to give to the Senate, according to the provisions of the Constitution on this behalf, their opinion on the following questions, to wit:

## Question 1.

Would action taken by the Building Authority pursuant to the provisions of section 9 of chapter 76 of the private and special laws of 1941, pledge the faith and credit of the State of Maine contrary to the provisions of the Constitution?

## Question 2.

Do the provisions of law recited herein together with the contemplated action proposed to be taken thereunder constitute a pledging of the faith and credit of the State of Maine contrary to the provisions of the Constitution?

## Question 3.

Would the passage of the resolve now pending before the Ninety-Fifth Legislature (Legislative Document No. 547) and the execution of a lease pursuant to the provisions of section 12 of chapter 76 of the private and special laws of 1941, constitute the creation by the Legislature of a debt or liability on behalf of the State within the purview of the limitations prescribed in Section 14 of Article IX of the Constitution as amended?

## Question 4.

Would the execution of a lease within the provisions of section 12 of chapter 76 of the private and special laws of 1941, become a contract which would result in the pledging of the faith and credit of the State of Maine contrary to the provisions of the Constitution?

## Question 5.

Would the passage of the resolve (Legislative Document No. 547) by the Ninety-Fifth Legislature obligate succeeding Legislatures to the appropriation of revenues in furtherance of such contemplated action in such manner as to constitute a violation of the Constitution?

In Senate Chamber, March 6, 1951
Read and Passed
/s/ Chester T. Winslow
Secretary

## NINETY-FIFTH LEGISLATURE

Legislative Document                                No. 547
S. P. 248                        In Senate, February 9, 1951.

Referred to Committee on Appropriations and Financial Affairs. Sent down for concurrence and ordered printed.

CHESTER T. WINSLOW, Secretary.

Presented by Senator Leavitt of Cumberland.

## STATE OF MAINE

## IN THE YEAR OF OUR LORD NINETEEN HUNDRED FIFTY-ONE

**RESOLVE, Appropriating Moneys for the Leasing, Operation and Maintenance of a State Office Building in the City of Augusta.**

**State office building; appropriation for. Resolved:** That there be, and hereby is, appropriated from the current revenues of the general fund the sum of $275,000 for the fiscal year ending June 30, 1953 for the purposes of leasing, operating and maintaining an office building to be constructed by the Maine State Office Building Authority under the provisions of chapter 76 of the private and special laws of 1941.

### ANSWER OF THE JUSTICES

*To the Honorable Senate of the State of Maine.*

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, the undersigned Justices of the Supreme Judicial Court, having considered the questions submitted to them by the foregoing Senate Order, and having examined the pending resolve, as well as the 1941 legislation to which it relates, respectfully state:

The first four questions can be considered together. Each involves the constitutional provisions that: "The credit of the state shall not be directly or indirectly loaned in any case," and "The legislature shall not create any debt or debts, liability or liabilities, on behalf of the state, which shall singly or in the aggregate, with previous debts and liabilities hereafter incurred at any one time, exceed $2,000,000." Constitution of Maine, Article IX, Section 14, as amended. The exceptions to this provision are inapplicable to the questions and need not be considered.

The foregoing provisions were written into the Constitution by the sixth Article of the Amendments thereto in

1847. Prior thereto there was no limitation on the power of the Legislature to create debts in behalf of the state. In 1867 the Justices of this Court said of the particular provisions that:

> "The general design was to provide a perpetual check against rashness or improvidence. 'The credit of the State shall not be directly or indirectly loaned in any case.' This indicates the great purpose of the amendment. But as there may be occasions for indebtedness for State purpose, authority is given to create a debt to the amount of three hundred thousand dollars. Indebtedness on the part of the State is limited to this amount. The object of the amendment cannot be misunderstood. Its binding force cannot be denied. It is the calm and deliberate expression of the popular will, embodied in the solemn form of a constitutional restriction upon legislative action."
> Opinion of the Justices, 53 Maine, 587.

A limitation of somewhat similar nature is imposed by the Constitution on our cities and towns. See Articles XXII and XXXIV of the Amendments to the Constitution. The provisions of Article XXII were considered by the court in *Reynolds* v. *City of Waterville*, 92 Me. 292. Decision therein was that the constitutional limitation on municipal indebtedness could not be evaded by making a purchase in the guise of a lease. The questions propounded must be considered in the light of that authority and the Opinion of the Justices, 99 Me. 515, that the limitations of Article XXII of the Amendments were as binding on the Legislature as on the municipalities to which they directly relate.

The Maine State Office Building Authority, as a body corporate and politic, was created by Chapter 76 of the Private and Special Laws of 1941, as "an agency of the State of Maine," to acquire land and erect an office building or an addition to the State House. The State is to execute a deed

to the Building Authority of the necessary land in the rear of the State House, if the Commission selects such land. If not so selected the right of eminent domain is given as to other land necessary.

Section 9 of the Act provides that the Building Authority may issue notes, bonds or other evidences of indebtedness for terms of not more than 30 years secured by mortgage of the proposed building and land, including also the right to assign as security "any lease-hold contract it may have with the state of Maine." There is no limitation on the amount of notes, bonds or other evidences of indebtedness which may be issued by the Building Authority.

Section 12 provides that upon completion of the construction the Building Authority shall execute a lease to the State of Maine "of the entire property for a rental so computed as shall provide for the payment of interest upon the bonds and notes or other evidences of indebtedness hereinbefore provided for and for their ultimate retirement." The Act makes the execution of the lease mandatory. Upon retirement the entire property is to be conveyed to the State. The so-called lease is not in legal effect a lease, it is a contract of purchase. The so-called rental is not true rent, to wit, payment for the use of property. The total amount of so-called rental is the purchase price the State is to pay for the property. When paid in full it will liquidate the entire indebtedness of the Building Authority. Being a contract of purchase, obligating the State to pay the purchase price, unless the entire amount thereof is to be paid pursuant to an appropriation *presently made* from funds or revenues *currently available* therefor, such contract of purchase would in the constitutional sense be a liability created by the Legislature on behalf of the State. It would constitute a liability which would have to be included with the existing debts and liabilities of the State in determining whether or not they exceed the $2,000,000 limit set

forth in Section 14 of Article IX of the Constitution. If such contract price in and of itself, or together with the existing debts and liabilities of the State, should exceed the constitutional debt limit, the so-called lease would be void.

A contract which obligates the State to pay money over a period of years for the purchase of property, creates a liability. It makes no difference whether you call the payments the State is obligated to make rental or installments on the purchase price, the legal effect is the same. If you vitiate the provision for the so-called lease and payment of rental the Building Authority cannot function. The ultimate source of all funds for the liquidation of the indebtedness of the Building Authority is the State of Maine. Under the so-called lease, the State obligates itself to furnish them. This creates a liability. If the aggregate amount of it either by itself or together with existing obligations exceeds the debt limit of the State, it is beyond the power of the Legislature to impose it.

Under the Act in question, the Building Authority is a mere agency of the State. It is expressly declared to be such by the Act itself. Without such declaration it would be. Its duties and functions determine its character. Its liabilities, which must be ultimately discharged by the State, are liabilities of the State within the spirit, purpose, and true meaning of Section 14 of Article IX of the Constitution. To hold otherwise would render the limitations imposed thereby meaningless.

Assuming, as we must, that the debt limit of $2,000,000 fixed by Section 14 of Article IX of the Constitution, will be exceeded if the State becomes obligated to make the payments provided for in the lease contemplated in the Act, Questions 1, 2, 3 and 4 must be answered in the affirmative.

We answer Question 5 in the negative. One Legislature cannot obligate succeeding Legislatures to make appropri-

ations. One Legislature may, within constitutional limitations, impose a contractual obligation upon the State which it is the duty of the State to discharge; but one Legislature cannot impose a legal obligation to appropriate money upon succeeding Legislatures.

Dated at Portland, Maine, this 13th day of March, 1951.

Respectfully submitted:

> HAROLD H. MURCHIE
>
> SIDNEY ST. F. THAXTER
>
> RAYMOND FELLOWS
>
> EDWARD F. MERRILL
>
> ROBERT B. WILLIAMSON

MEMORANDUM

Mr. Justice Nulty was out of the State when the foregoing questions were submitted. Despite his entire willingness to return for the purpose of answering them, it is the unanimous view of his Associates that such action on his part is entirely unnecessary. He has all the material before him, has considered the questions and authorizes the statement that he concurs in the answers.

HAROLD H. MURCHIE