STATE EX REL. ROGERS, School Director, Respondent, vs. MILLIGAN, School Clerk, Appellant.

*September 10—October 5, 1954.*

551

552

For the appellant there was a brief and oral argument by
*E. Nelton* of Balsam Lake.

For the respondent there was a brief by *Doar & Knowles*
of New Richmond, and oral argument by *Warren P. Knowles
III.*

FAIRCHILD, C. J.   Counsel frankly concede that this is
a test case to determine whether the device resorted to by the
school district in this case, pursuant to the authority granted
in sec. 40.305, Stats., violates sec. 3, art. XI of the Wisconsin
constitution, in that the cost of the new school building, to
finance which the building corporation is to mortgage its
leasehold interest, exceeds the debt limit of said constitutional
provision.

The pertinent provisions of sec. 3, art. XI of the constitu-
tion, are as follows:

"No. . . . school district, . . . shall be allowed to become
indebted in any manner or for any purpose to any amount,
including existing indebtedness, in the aggregate exceeding
five per centum on the value of the taxable property therein,
to be ascertained by the last assessment for state and county
taxes previous to the incurring of such indebtedness. . . .
Any . . . school district, . . . incurring any indebtedness
as aforesaid, shall, before or at the time of doing so, provide
for the collection of a direct annual tax sufficient to pay the in-
terest on such debt as it falls due, and also to pay and dis-
charge the principal thereof within twenty years from the
time of contracting the same; . . ."

The total value of the taxable property in the school dis-
trict, as ascertained by the last assessment for state and
county taxes, was $975,247. Therefore the maximum debt
which the school district is authorized to create is five per cent
of said sum, or $48,762.35, which amount is totally inade-
quate to construct the school-building facilities contemplated.

The school district proposes to lease vacant school lands
to a separate school-building corporation created under

ch. 181, Stats., the corporation to immediately re-lease the premises to the district; but the corporation, as a condition of the lease to it, being obligated to construct the new school building and finance the cost of the same by a mortgage of its leasehold interest. This mortgage will be retired out of the rents payable by the district under the re-lease from the corporation to the district. After such debt is retired, the corporation will convey the leased premises, including the new building and its equipment, to the district.

The lease to the corporation, the re-lease back to the district, and the mortgaging of its leasehold interest by the corporation must be viewed as one transaction, and not as three isolated occurrences. The net result is that because of the mortgage there is the possibility of the district being deprived of the use of its land during the remaining term of the lease if it defaults in the payment of the rent. The only difference between this situation and the one confronting us in *State ex rel. Thomson v. Giessel* (1954), ante, p. 331, 65 N. W. (2d) 529 (hereinafter referred to as the "State Office Building Case"), is that only vacant land is involved here, while in the latter case the mortgaged leasehold interest covered not only vacant land but also the existing state office building. From the standpoint of legal principle, if the mortgaging of a leasehold interest in land and a building creates a debt, then the mortgaging of a leasehold of land alone does also, where the land is already owned by the governmental unit involved at the time the leasing arrangement is entered into, and the governmental unit requires the use of such land for governmental purposes.

Our attention is called to the effort in other states to meet a similar situation by creating a separate building company where such method was ruled to be invalid. *McCutcheon v. State Building Authority* (1953), 13 N. J. 46, 97 Atl. (2d) 663; *Hively v. School City of Nappanee* (1929), 202 Ind. 28, 169 N. E. 51; *State v. Volusia County School Building*

*Authority* (Fla. 1952), 60 So. (2d) 761; *State ex rel. Public Institutional Building Authority v. Griffith* (1939), 135 Ohio St. 604, 22 N. E. (2d) 200; *State ex rel. Public Institutional Building Authority v. Neffner* (1940), 137 Ohio St. 390, 30 N. E. (2d) 705; *People ex rel. Greening v. Green* (1943), 382 Ill. 577, 47 N. E. (2d) 465; *Opinion of the Justices* (1951), 146 Me. 183, 79 Atl. (2d) 753; *Opinion of the Justices* (1951), 146 Me. 295, 80 Atl. (2d) 869.

The limiting of the amount of the indebtedness which may be imposed upon a community is a rule which public opinion at the time of the writing of the constitution required to be written into that instrument. It was the purpose to fix limitations with respect to liabilities within which the representatives of the people were to conduct the government. It was not the intention of the writers of our constitution to finally end things in a definite and static state bound to then existing conditions, but it is apparent that if the people are the authorities over the constitution, we are bound, when moving from one basic plan to another, to move in that direction through the deliberate and thoughtful processes of constitutional amendment. It follows that the provisions of sec. 40.305, Stats., under which the school district is acting, to lease to the corporation school lands, the immediate releasing back to the district of such lands, the lease being upon the condition that the corporation, lessee, will raise the money for the construction of a building by mortgaging its leasehold interest, the cost of which building far exceeds the district's allowable debt limit, is authorizing the district to become indebted in a manner contrary to the constitutional inhibition.

We must follow the law as stated in the *State Office Building Case* and hold that the plan followed by the district creates a lien on its property, and that in consequence thereof an indebtedness exceeding that permitted under sec. 3, art. XI of the Wisconsin constitution, has resulted.

In justice to the learned trial court, it should be stated that he did not have the benefit of our decision in the *State Office Building Case* at the time of rendering his decision, the judgment appealed from having been rendered on July 28, 1954, the very day on which our opinion in the *State Office Building Case* was handed down.

*By the Court.*—Judgment reversed, and cause remanded with directions to deny the writ and dismiss the petition.