WILLIAM D. COLLINS et al., complainants,

*v.*

INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EM-
PLOYEES AND MOVING PICTURE MACHINE OPERATORS,
&c., et al., defendants.

DOMINICK MAGLIO et al., complainants,

*v.*

MOVING PICTURE MACHINE OPERATORS OF ESSEX COUNTY,
NEW JERSEY, LOCAL 244, &c., et al., defendants.

[Submitted February term, 1945. Decided April 19th, 1945.]

*Messrs. Gross & Blumberg* (*Mr. Leo Blumberg* and *Mr. Milton H. Goldberger*), for the respondent Moving Picture Machine Operators of Essex County, New Jersey, Local 244.

*Mr. Harold Simandl* and *Mr. Isadore H. Colton,* for the appellants Louis Kaufman and Harry S. Oppenheimer.

The opinion of the court was delivered by

Case, J.

This is an appeal by Louis Kaufman and Harry S. Oppenheimer from a decree of the Court of Chancery dated November 21st, 1944, directing that an abstract of a Chancery decree be filed in the office of the clerk of the Supreme Court pursuant to *R. S. 2:29–58;* that a writ of *fieri facias* issue out of Chancery against Kaufman and Oppenheimer in the sum of $13,277.06 with interest thereon from June 1st, 1937, plus the costs to be taxed in the present proceedings; that Kaufman and Oppenheimer make discovery; and that leave be given to apply for writs of execution thereunder against the wages and salaries of Kaufman and Oppenheimer. The Court of Chancery considered that the issue was controlled by the principle of *res judicata.*

The matter of which this is a part has been the subject of much litigation. Kaufman was the business manager, sometimes called business agent, and Oppenheimer was the recording secretary, of Moving Picture Machine Operators, Local 244, of Essex County, &c. Those two men, with other officers, had so thoroughly entrenched themselves in the control of the local, and in the maintenance of improper practices, as to require the intervention of the Court of Chancery in order to free the local from their misused power. Two suits, entitled as above, were instituted in the Court of Chancery in 1933, one by Maglio and others, and the other by Collins and others, wherein the local union, Kaufman, Oppenheimer and others were defendants. The suits were consolidated (opinion in *119 N. J. Eq. 230*) and the final decree, entered on January 14th, 1936, provided that counsel fees aggregating about $13,000, and other expenses, should be paid primarily by the defendants Kaufman and Oppenheimer, and in the event of default of such payment by the individual defendants that Local No. 244 make payment and recover from them.

Later, October 9th, 1941, George Gilligan and others filed a bill bringing in Local No. 244, Kaufman, Oppenheimer and others as parties defendant and alleging amongst other things that Kaufman, by reason of his domination over the union,

had caused a resolution to be passed providing for the payment of the said costs by the union, and that neither Kaufman nor any of the other individual defendants directed by the above mentioned decree to make restitution had made such restitution and that, because they had control of the affairs of the union, no demand had been made upon them. That allegation was in subdivision (f) of paragraph 9 of the bill and was put clearly in issue by a specific denial and by a detailed statement of what the defendants deemed to be the explanatory facts in paragraph 13 of the answer. The Gilligan bill included the prayer that Kaufman, Oppenheimer and others be compelled to make restitution to the local of the costs and counsel fees allowed in the consolidated suit. The opinion filed in Chancery on September 9th, 1943, said:

"The Union's failure to collect has been an abandonment, thus far, of a valuable property right. If the failure continues, it will be, in effect, a gift to Kaufman and Oppenheimer. The court, by its decree in the Collins case, found that the money should be paid by them to the Local. It cannot be even plausibly argued that the forgiveness of the debt would promote the legitimate purposes of the Local."

By the decree dated October 29th, 1943, the officers of the union were directed and enjoined to collect or endeavor to collect the said allowances and cause the same to be paid into the treasury of the local by Kaufman and Oppenheimer and to issue writs of execution against the real and personal estate of Kaufman and Oppenheimer and to take any other proper and appropriate measures to collect. Further, the decree restrained the local from paying to Kaufman or Oppenheimer any sums of money due or to grow due for salary, expenses, &c., until reimbursement had been so made to the treasury. That suit, that is to say, the Gilligan suit, was, according to the allegations of paragraph 1 of the bill thereof "for their own benefit (viz., for the benefit of the complainants) and the benefit of such other members of said Local No. 244 as shall come in under this bill and shall contribute to the expense of this suit." However, the relief sought with respect to the matter now in controversy was for the benefit, not merely of the complainants and those who might join with

them, but of the entire local. The decree in the Gilligan suit was appealed from. Kaufman and Oppenheimer were among the appellants who filed a petition of appeal to this court, but the union was the only appellant to appear here. The disposition in this court was a dismissal of the appeal. *Gilligan* v. *Moving Picture Operators, &c., 135 N. J. Eq. 484.*

The present proceeding arose on the petition of the local, in its own name, filed May 31st, 1944, under the title of the consolidated suits. The petition set forth the decree in those suits and the decree in the Gilligan suit, alleged that small sums had been collected from Kaufman and Oppenheimer but that the major portion of the allowances in the decree of January 14th, 1936, was still due and asked for the privilege of creating a lien upon lands by filing an abstract of the decree (*R. S. 2:29–58*) in the office of the clerk of the Supreme Court and for permission to issue a writ of *fieri facias*, &c. (*R. S. 2:29–63*). The Court of Chancery held that, so far as concerned the costs and counsel fee, the Gilligan suit was a representative suit in which the association or its members collectively on the one hand and Kaufman and Oppenheimer on the other were adverse parties; that while the charge in the bill (the Gilligan bill) relating to costs and counsel was introduced as evidential of domination, it nevertheless was a direct charge and was directly met by the answer (paragraph 13) and presented an issue for decision; that paragraph 7 of the bill's prayer sought relief based on the charge; that the matter was considered in the court's opinion and in the supplemental memorandum relating to the form of the decree; that it was adjudicated by the decree in paragraphs I and II (the reference is still to the Gilligan suit); that this part of the decree was expressly the subject of appeal in the petition of appeal; and that consequently Kaufman and Oppenheimer were "clearly * * * estopped by the record in the Gilligan suit."

The appellants herein argue their case under eleven points which do little more than sound variations upon the theme that they are not so estopped against resisting payment of the Chancery money decree. One of the contentions is that on or about September 8th, 1936, there was a settlement

arrangement made between the parties to the Collins-Maglio cases as a result of which and in consideration of which Kaufman and Oppenheimer discontinued their part of the appeal from those decisions. That agreement, according to its terms, was to be "considered in lieu or in modification, or in clarification of the decree of the Court of Chancery, dated January 14th, 1936." The Gilligan bill of complaint was not filed until October 9th, 1941, and the agreement of settlement just referred to was set up in the answer filed by the defendants therein, among whom were Kaufman and Oppenheimer. Therefore that stipulation, now given much prominence, was considered and rejected as a controlling element by the Court of Chancery in its opinion and decree in the Gilligan suit. The Gilligan decree, the appeal from which was dismissed in this court, is *res judicata* of that and other questions. Back of it all is the real issue which also was decided by Vice-Chancellor Bigelow in the *Gilligan Case* as follows: "The principal object of the suit is to do away with favoritism in the assignment of work and to break Kaufman's grip on the Local. * * * The object of the bill and the prime purpose of the injunction * * * was to prevent favoritism and unjust discrimination among members of the Union. It is entirely clear that Kaufman and his followers have habitually disobeyed the decree by exercising their power in a discriminatory manner, favoring one man at the expense of another." Frequently what appeared to be the action of the Local was an illusion produced by Kaufman's control. As was said by Mr. Justice Porter of this court when the case was before us on appeal (*135 N. J. Eq. 484, 487*) :

"The Court of Chancery found that the individual rights of the members of this local were infringed and the purposes of the organization frustrated by the wrongful acts of Kaufman and Oppenheimer in their control and domination of the local and the inequitable and unjust discrimination in the assignment of members to jobs. Equity has ample power to remedy such a condition. The method used, it seems to us, was entirely justified and equitable."

We think that Chancery was clearly right in regarding the Gilligan suit as a representative suit in so far as it concerned

the costs and counsel fees and in considering that the present appellants were estopped by the record from attempting, anew, to litigate their liability to pay the disputed allowances or, the local having paid them, to reimburse the local. There must be an end to litigation. The appellants had their full day in court on the propriety of the money decree and of their obligation to pay, or to make reimbursement for the payment of, the same.

The decree under review will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, WELLS, RAFFERTY, THOMPSON, DILL, FREUND, JJ. 14.

*For reversal*—None.