67 N.J. Super. 435 (1961)
170 A.2d 820
IN THE MATTER OF A PETITION OF ROSE GARDINER, A CITIZEN OF THE CITY OF JERSEY CITY, COUNTY OF HUDSON, AND STATE OF NEW JERSEY, APPEALING FROM THE CERTIFICATION OF THE DIRECTOR OF THE DIVISION OF LOCAL GOVERNMENT RELATING TO THE 1960 MUNICIPAL BUDGET OF THE CITY OF JERSEY CITY.
ROSE GARDINER, PETITIONER-APPELLANT,
v.
CITY OF JERSEY CITY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 27, 1961.
Decided May 9, 1961.
*437 Before Judges CONFORD, FREUND and KILKENNY.
*438 Mr. Robert Greenberg argued the cause for petitioner-appellant.
Mr. Meyer Pesin argued the cause for defendant-respondent City of Jersey City (Mr. Ezra L. Nolan, Corporation Counsel, attorney).
Mr. Lee A. Holley, Deputy Attorney General, argued the cause for defendant-respondent Division of Local Government (Mr. David D. Furman, Attorney General, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
This is an appeal from an order of the Local Government Board, Division of Local Government, affirming the determination of its Director in rejecting an attack by the petitioning taxpayer of the City of Jersey City upon a single line item in the Jersey City municipal budget for the year 1960.
The item in question reads: "141  Contract  Seton Hall College of Medicine and Dentistry  1960 Appropriation  $320,000.00; 1959 Appropriation  $120,000." (Only the 1960 expenditure is attacked; the reference to the 1959 item is for comparison purposes only.)
The objection here advanced to the certification and approval by the Director, acting under N.J.S.A. 40:2-53, of the 1960 budget, is founded upon the claim that the inclusion in the budget of the specific item mentioned does not comply with the requirements of chapter 2 of Title 40 of the Revised Statutes, does not "permit the exercise of the comptroller function within the municipality," and in other respects fails to comply with "the requirements of law," all of these criteria being set forth in the cited section (paragraphs (b), (d), and (e)) as conditions for such budget approval.
The item attacked is intended to meet the expense for the year 1960 attendant upon the city's performance in that year of an "Affiliation Agreement" entered into July 17, *439 1958 between the city and Seton Hall College of Medicine and Dentistry, the city's action having been duly approved by a resolution of the governing body. The agreement recited that the College had (previously) leased from the city certain space in two of the buildings of the Jersey City Medical Center (owned and controlled by the city), referred to the mutual advantages of affiliation between a medical and dental school and a public hospital, and bound the parties for a term of 47 years, the College to render manifold services to the city of detailed description not necessary for recital here, and the city to make monthly payment to the College of its "audited costs" for performing such services, determinable in accordance with a formula set forth in the agreement. The first monthly payment was provided to be paid January 31, 1959 and fixed at $10,000, subject to later audit. The entry by municipalities into contracts of precisely this nature, not to exceed terms of 50 years, is specifically authorized by statute. L. 1955, c. 22 (N.J.S.A. 30:9-23.6 to .14).
The gravamen of the argument of the taxpayer is that the 1960 budget item is illegal because the making of the 1958 contract was not preceded by inclusion in the annual city budget for the year 1958 of the total cost of the contract to the city for its full term or by the previous adoption of an ordinance authorizing an appropriation for that total sum. The contention is alleged to rest upon N.J.S.A. 40:2-29, stemming from the Local Budget Law, and N.J.S.A. 40:50-6, whose source is the legislation governing municipal contracts included in the Home Rule Act of 1917. Reliance is mainly placed upon the construction of these enactments in Samuel v. South Plainfield, 136 N.J.L. 187 (E. & A. 1947). The position taken is that since the allegedly prerequisite appropriation ordinance was not adopted, no money may ever be legally expended by the city in performance of the contract.
We observe, preliminarily, that this affiliation contract has been the subject of previous unsuccessful litigation in the *440 courts by another taxpayer wherein several grounds of illegality were asserted and found not to be well taken. The present petitioning taxpayer purports to concede, for purposes of this case, the legality of the contract, as such, but her position, if sustained, would obviously prevent the city from paying its obligations under the contract and thus prejudice the rights of the College, and this without the latter's having been made a party and given an opportunity to be heard. In view of our conclusions, however, we need not be concerned about the absence of the College as a party.
The Local Government Board rested its dismissal of the proceeding on the ground that petitioner, while purporting only to challenge a line item in the 1960 budget, was actually attacking the contract itself, since she was relying upon N.J.S.A. 40:50-6, which prohibits the making of a contract where its provisions are not complied with, and upon N.J.S.A. 40:2-29, which declares null and void a contract made in violation of its terms and prohibits the payment of any money thereon. The Board concluded that the determination of the legality of contracts entered into by a municipality is not within its jurisdiction, but rather a matter for the courts. We agree with the general soundness of this viewpoint.
Petitioner's reliance for jurisdiction of the Director and the Board upon paragraph (b) of N.J.S.A. 40:2-53 is not apt. That provision refers to approval of "specific items of appropriations enumerated in section 40:2-52." But none of the specific items so enumerated involve non-mandatory contract expenditures. As to paragraph (d) of section 40:2-53, the Director's authorized inquiry is whether, "in itemization, form, arrangement and content, the budget will permit the exercise of the comptroller function within the municipality." Petitioner's argument in this regard, as stated in her brief, is that the comptroller function is not exercised when a 1960 appropriation is made for expenditures under a 1958 contract. But petitioner is at pains to state, *441 in this connection, that she is not, for this purpose, attacking the validity of the 1958 contract. Our only response to these assertions, if we understand them, is that they are totally irrelevant to the exercise of the "comptroller function"; and if they are simply another form or argument that without a prior appropriation in the year of the making of a contract no valid appropriation may ever be made therefor in later years, the merits of the argument will be considered and shown to be unsubstantiated, infra. As to the jurisdiction of the Director and Board to entertain this kind of inquiry, a fairly debatable issue is presented.
Paragraph (e) of N.J.S.A. 40:2-53 requires the Director to determine whether "in all other respects the budget complies with the requirements of law * * *." Moreover, N.J.S.A. 40:2-52 calls for the Director to "examine the budget for * * * compliance as to form, arrangement and content with the provisions of this chapter * * *." Insofar as N.J.S.A. 40:50-6, in and of itself, is concerned, we find nothing which, in the context of this case, would vest any jurisdiction in the Director to pass upon a 1960 budget item. Rather does petitioner's argument go to a construction of that statute as invalidating a 1958 contract because the 1958 budget contained no appropriation therefor. But we incline to the view that N.J.S.A. 40:2-29 does establish a basis for jurisdiction. That provision is a part of the original Local Budget Law, L. 1936, c. 211, § 301, thoroughly revising municipal budget practices and vesting general supervisory control over local budgets in the state Commission of Local Government (now the Director of the Division of Local Government). Section 40:2-29 prohibits the expenditure of any money, the incurrence of any liability, or entrance into any contract (with specified exceptions) contrary to its terms. "No moneys" may be paid on any contract made in violation of the section. It is consequently our view, although we have decided to determine this case on its merits from the standpoint of both of the statutes invoked by petitioner, that there was probably *442 jurisdiction in the Director to entertain this petition, within his authority under sections 40:2-52 and 53, to review the content of budgets in respect of compliance with any positive regulations concerning the expenditure of money contained in any part of chapter 2 of Title 40, and sections 40:2-52 and 53 constituting part of that chapter.
But even assuming the foregoing, it would seem that a taxpayer should raise a question based upon the alleged illegality of a municipal contract with the Director at the first available opportunity. The same objection here raised as to the 1960 budget could have been submitted to the Director with respect to the 1959 budget, which also contained an item for meeting the affiliation contract. Another taxpayer was attacking this contract in the courts on the same ground in 1958 and 1959, and this was a matter of public knowledge. See infra. Under petitioner's theory, she might have held her fire until the city budget for the year 1980, or, for that matter, that for 1990, was presented to the Director for approval, the city and College in the meanwhile carrying out the terms of the allegedly illegal agreement. A serious question as to petitioner's laches is presented, but we regard the public importance of the issues presented to impel a decision on the merits.
So far as here material, N.J.S.A. 40:2-29 reads as follows:
"Except as may be otherwise provided in section 40:2-31 of this Title, no officer, board, body or commission shall, during any fiscal year, expend any money (except to pay notes, bonds, or interest thereon), incur any liability, or enter into any contract which by its terms involves the expenditure of money:
a. For any purpose for which no appropriation is provided in the budget or by temporary appropriation pursuant to section 40:2-12 of this Title, or
b. In excess of the amount appropriated for any such purpose.
Any contract, oral or written, made in violation hereof shall be null and void as to the county or municipality, and no moneys shall be paid thereon. Nothing in this section contained, however, shall prevent the making of contracts or the spending of money for capital projects to be financed in whole or in part by the issuance of notes, *443 or bonds, nor the making of contracts of lease or for services * * * for a period exceeding the fiscal year in which such contract is made, when otherwise provided by law; provided further, that nothing in this section nor in section 40:50-6 of this Title shall prevent a municipality from making a contract for the spending of money for the purchase of the right, title and interest in the right-of-way of any street railway company in the municipality, when said right-of-way extends in, over and along any public street or highway in the State of New Jersey and the improving or paving of said right-of-way after the same has been acquired." (Emphasis added.) See revision by L. 1960, c. 169, effective January 1, 1962 (N.J.S. 40A:4-57).
N.J.S.A. 40:50-6 reads as follows:
"No municipality shall enter into any contract, the cost of which is to be met by funds not included in the budget of appropriations for the year, unless prior thereto there shall have been regularly adopted by the governing body an ordinance authorizing an appropriation sufficient to meet the cost of carrying out the provisions of the contract. This section shall not apply to the use of funds of departments, for the operation of which budget appropriations are not made, nor to contracts for professional services for the liquidation or foreclosure of tax title liens in such municipalities wherein it is agreed that the cost of the services are to be paid, in all or in part, from the funds derived, or to be derived from the redemption of liened property or the sale of foreclosed property, subject to approval of the Department of Local Government."
The content and subject matter of these statutes, although of diverse origin, make it evident that they should be taken in pari materia, for purposes of construction. They have been so dealt with by the cases construing them. We shall not pretend to be able to find in the literal language employed a totally compatible and harmonious scheme for the fiscal regulation of all types of municipal contracts of varying term periods, in the background of the many extraneous statutory provisions governing the making of municipal contracts of various kinds, as, e.g., N.J.S.A. 30:9-23.6 to 14, cited above. Nor does this case call for such a comprehensive exegesis or for reconciling all the cases construing these statutes. We confine ourselves to the narrow issue projected.
*444 Where, as here, there is specific statutory authority for the entrance by a municipality into a long-term contract of affiliation between a public hospital and a medical and dental college, contemplating substantial expenditures annually by the city during the term of the contract, but no expenditures during the first municipal fiscal year of the contract term, do the fiscal control statutes quoted above necessarily require, as a condition precedent to the legality of the contract and of any expenditures budgeted therefor in later years, an appropriation in the year of the making of the contract, either in the regular annual budget for that year or by separate appropriation ordinance, of the entire sum necessary to meet the cost of the contract over its entire term? Petitioner projects the affirmative answer to that query.
It is perfectly clear to us that on the mere statement of it the contention is untenable. Except where money for municipal purposes is to be raised by borrowing or other extraordinary means (e.g., income from property, contributions by other government agencies, etc.), all public expenditures are met by taxation. Appropriations ordinarily contemplate the raising by taxation of the funds appropriated by tax levy in the year of the appropriation. (See the special appropriation requirements involved where the project is to be financed by issuance of bonds. N.J.S.A. 40:1-12.) It would obviously be a fiscal absurdity for Jersey City to have attempted to appropriate and raise by taxation in the year 1958 all the money estimated (assuming such an estimate were possible) to be required to meet the total costs to the city attendant upon performance of this contract until the year 2005, the end of the contract term.
A statute must, if reasonably possible, be accorded a construction which is sensible and "consonant to reason and good discretion," rather than one which, though literal, "leads to absurd consequences." Schierstead v. Brigantine, 29 N.J. 220, 230, 231 (1959).
*445 It is entirely clear to us, applying the foregoing principle, that when section 40:50-6 refers to "any contract the cost of which is to be met by funds not included in the budget of appropriations for the year," it means a contract whose cost is or may be payable in whole or part during the year, not contracts no part of the cost of which is payable during the year. The latter is the situation involved here. This view is reinforced by the circumstance that section 40:2-29, which, as noted, must be read in pari materia with section 40:50-6, expressly declares that nothing contained therein shall "prevent * * * the making of contracts * * * for services for a period exceeding the fiscal year in which such contract is made, when otherwise provided by law." In the present instance, as already noted, the contract was "provided for by law," and its authorization by resolution rather than ordinance was perfectly regular, no contrary direction being contained in the enabling statute. Mayor, etc., of Jersey City v. Town of Harrison, 71 N.J.L. 69, 71 (Sup. Ct. 1904), affirmed 72 N.J.L. 185 (E. & A. 1905); Buckley v. Mayor, etc., of Jersey City, 105 N.J. Eq. 470, 479 (Ch. 1930), affirmed o.b. 107 N.J. Eq. 137 (E. & A. 1930).
The construction of the fiscal control statutes we have arrived at is supported by the recent decision of the Supreme Court in Fereday & Meyer Co., Inc. v. Elizabeth Bd. of Public Works, 27 N.J. 218, 225-226 (1958), where it was held (and conceded by the parties there involved) that a three-year garbage disposal contract is amply supported by an appropriation covering the requirements of the contract for the first year, within the provisions of sections 40:2-29 and 40:50-6, the court citing Viracola v. Long Branch, 1 N.J. Misc. 200 (Sup. Ct. 1923), and De Bow v. Lakewood Township, 131 N.J.L. 291 (Sup. Ct. 1944), in both of which contentions like that advanced by the present petitioner were rejected.
Against the force of the foregoing considerations petitioner cites Samuel v. South Plainfield, supra (136 *446 N.J.L. 187). To the extent that that case can be read as proscribing, on the specific ground projected by petitioner, the procedure used by the city in adopting the contract here involved, it must be regarded as inconsistent with the rationale of the more recent holding in the Fereday & Meyer case, supra, which implicitly reflects the sensible principle that the statutes require appropriations to be made only in and for the year in which the contract expenditure is or may be payable. We are perforce required to follow the more recent, and clearly the more soundly conceived, of the two decisions.
The city has undertaken to prove that there were included in the 1958 budget of the city sufficient funds properly expendable to meet any services under the contract to be rendered during the year 1958. The reference is to the budgetary item for the operation of the Medical Center for the year 1958. An affidavit was submitted to show an excess of $175,357.72 in that account as of July 1, 1958, over and above other funds necessary for the general operation of the Medical Center in 1958. But we have no occasion to decide whether that source was properly utilizable for expenditures under the contract in 1958, as the contract required no payment at all to be made in the year 1958, and we have construed the statutes not to require an appropriation for any fiscal year during which no part of the contract cost is or can be payable. If, as petitioner argues, it is in the public interest that any contract authorizing or requiring the expenditure of municipal money in years subsequent to that in which such contract is made should be preceded by an appropriation ordinance, in order that the general public may have the benefit of the wider public notice required by statute where action is taken by ordinance rather than resolution, the contention should be addressed to the Legislature. That desideratum, incidentally, is not relevant to fiscal control, which is satisfied by the requisite that there be an appropriation for every expenditure (here met), but to public notice of proposed contract *447 obligations, in which area, as noted, it is now the law that action by resolution suffices unless the particular enabling act requires an ordinance.
We rest our decision herein on the additional ground that the basic issue involved is precluded against petitioner, under the rule of res judicata, by its previous resolution adversely to her position by the Law Division, Superior Court, in Jersey City Association for Separation of Church and State v. Seton Hall College of Medicine and Dentistry (Law Division, Hudson County, Docket No. L-13986057, P.W.; Judgment entered May 11, 1959).
The plaintiff there was another taxpayer of the city, suing in the status of "citizen and taxpayer," and the city itself was a co-defendant. The action was instituted September 3, 1958. The first count of the complaint, inter alia, charged the affiliation agreement here in question to be "void, illegal and of no effect because the City ignored the requirements of the `local budget law,' N.J.S. 40:2-1 et seq., particularly 40:2-29 and the law pertaining to municipal contracts, particularly 40:50-6, as to the necessity for either budgeting the contract or passing an appropriation ordinance * * *." Subsequently the plaintiff in that action made a motion for summary judgment on the first count alone, and defendants moved for summary judgment on all counts. We have examined the briefs and affidavits submitted to the trial court on those motions, and it appears therefrom that the matter of the alleged invalidity of the affiliation agreement for alleged noncompliance with N.J.S.A. 40:2-29 and 40:50-6 was argued to the court. The judgment of the court denied plaintiff's motion and granted those of defendants. No appeal therefrom was taken.
It is consequently clear that the legal issue which lies at the heart of the present petitioner's objection to an approval of the 1960 budget, resolution of which in her favor is an absolute prerequisite to the successful maintenance of her proceeding herein, has been determined against her position by judgment of a court of competent jurisdiction. That *448 judgment is consequently res judicata of the present controversy if the circumstance that the taxpayers in the two proceedings were different does not otherwise dictate as a matter of law. Hudson Transit Corporation v. Antonucci, 137 N.J.L. 704 (E. & A. 1948).
Petitioner first seeks to avoid the effect of the prior judgment on the ground that the subject matter of the two respective proceedings differs. However, this is not, properly speaking, a case of different subject matter, but of different causes of action. Such a difference is immaterial if a postulate of law essential to the success of the party in the later proceeding has been distinctly put in issue and adjudicated contra. in the earlier, particularly where, as here, the subject matter in both proceedings arises out of the same transaction. See 30A Am. Jur., Judgments, § 360, p. 401; Restatement, Judgments, §§ 68, 70, comment pp. 319, 320; N.J. Highway Authority v. Renner, 18 N.J. 485, 493, 494 (1955); Mazzilli v. Accident, etc., Casualty Ins. Co., etc., 26 N.J. 307, 314 (1958) (quotation from City of Paterson v. Baker, 51 N.J. Eq. 49 (Ch. 1893)).
Nor will it avail petitioner that the taxpayer in the earlier action was one other than herself. A taxpayer attacking governmental action in which he has no peculiar personal or special interest is taken to be suing as a representative of all taxpayers as a class. The general rule is that in the absence of fraud or collusion a judgment for or against a governmental body in such an action is binding and conclusive on all residents, citizens and taxpayers with respect to matters adjudicated which are of general and public interest. 50 C.J.S. Judgments § 796, p. 337; cf. Edelstein v. Asbury Park, 51 N.J. Super. 368, 389 (App. Div. 1958); see also 18 McQuillin, Municipal Corporations (3d ed. 1950), § 52.50, pp. 124, 125; 52 Am. Jur., Taxpayers' Actions, § 38, p. 26.
Although our courts have had no prior occasion to consider the rule of conclusiveness in taxpayers' actions, the rule of virtual representation to bar relitigation of issues *449 decided in other kinds of class suits has frequently been applied in situations where policy implications were not as strong as those obtaining here. See, e.g., Collins v. International Alliance, etc., Operators, 136 N.J. Eq. 395 (E. & A. 1945); Commercial Trust Co. of N.J. v. Kohl, 140 N.J. Eq. 294 (Ch. 1947); Speizer v. Lerner, 11 N.J. Super. 563 (Ch. Div. 1951); Harker v. McKissock, 12 N.J. 310 (1953); cf. Bango v. Ward, 12 N.J. 415 (1953); Bd. of Directors, Ajax, etc., v. First Nat. Bank of Princeton, 33 N.J. 456, 462-465 (1960).
There is no suggestion in the present appeal that the prior action was collusive or that the taxpayer there was inadequately represented. Nor can it be said that the earlier action was not of a nature likely to come to the attention of taxpayers generally, so as to make unfair the preclusion of an action by a second taxpayer not actually cognizant thereof (nor is the latter here asserted to be the fact). Strong considerations of public policy dictate that after a bona fide and well-contested litigation by a taxpayer of a specific question asserted to affect the validity of municipal action in respect of an important and well-known public enterprise, the judgment entered should conclude all other taxpayers, they having been free to intervene, if they so chose, in the litigation. It is of incidental note that counsel for the present petitioner was also counsel for the taxpayer plaintiff of the earlier action, in a recent appeal before the Supreme Court in another phase of the same general course of litigation over the relationship between Jersey City and Seton Hall Medical and Dental College. See Jersey City Association for Separation of Church and State v. The City of Jersey City, 34 N.J. 177 (decided February 6, 1961).
We are clear that in all the circumstances presented the adjudication of the controlling substantive question involved herein by judgment of the Law Division in the previous action should be held binding and conclusive against the attempt to relitigate it in this proceeding.
Judgment affirmed.