206 N.J. Super. 499 (1985)
503 A.2d 318
JOSEPH J. PARISI AND J. FLETCHER CREAMER, SR., PLAINTIFFS-APPELLANTS,
v.
NORTH BERGEN MUNICIPAL PORT AUTHORITY, TOWNSHIP OF NORTH BERGEN, HUDSON PLAZA, INC., ASSET MANAGEMENT CORP., AND ROC HARBOR CORP., DEFENDANTS-RESPONDENTS.
ELIZABETH MEYERS, PLAINTIFF-APPELLANT,
v.
NORTH BERGEN MUNICIPAL PORT AUTHORITY, TOWNSHIP OF NORTH BERGEN, HUDSON PLAZA, INC., ASSET MANAGEMENT CORP., AND ROC HARBOR CORP., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 1985.
Decided November 15, 1985.
*501 Before Judges FURMAN, PETRELLA and ASHBEY.
Melvin Gittleman argued the cause for appellants Joseph J. Parisi and J. Fletcher Creamer, Sr. (Steven Muhlstock of counsel and on the brief).
George Pollard argued the cause for appellant Elizabeth Meyers. (George Pollard on the brief).
Michael Scherby argued the cause for respondent ROC Harbor Corp. (Contant, Contant, Schuber, Scherby & Atkins, attorneys, Andrew T. Fede on the brief).
No one appeared on behalf of respondent Township of North Bergen. (Mariniello & Oury, attorneys; Joseph R. Mariniello of counsel, Bonnie J. Mizdol on the brief).
No one appeared on behalf of respondents Hudson Plaza, Inc. or Asset Management Corp. and no briefs were filed.
PER CURIAM.
These consolidated appeals involve a review of the action of the "North Bergen Municipal Port Authority" (Authority) in authorizing construction of high-rise towers in the "Port District" of North Bergen which did not comply with the zoning ordinances of the Township of North Bergen. The appeals were filed by property owners and taxpayers in North Bergen. We reverse.
Some background discussion is necessary because of the interrelationship between what happened before the North Bergen Planning Board and the Authority. ROC Harbor Corporation (ROC Harbor)[1] had originally filed a site plan and variance *502 application with the planning board as contract purchaser with respect to several lots consisting of approximately 21.5 acres between the Hudson River and River Road in North Bergen (some of that land is apparently under water). The property is adjacent to property owned by appellants Joseph J. Parisi and J. Fletcher Creamer, Sr. Prior to applying to the Authority, ROC Harbor had filed a February 27, 1981 application with the Planning Board in which it sought site plan approval and a variance for construction of 679 condominium dwelling units, 559 of which would be in two high-rise towers (each 240 feet in height). ROC Harbor sought a variance from the 40 foot height limitation in North Bergen's zoning ordinance. Public hearings were held on the application on six separate days. The Planning Board ultimately adopted a June 15, 1982 resolution approving the site plan and granting the height variance.
Parisi and Creamer then challenged the Planning Board's determination in a prerogative writ action[2] filed in the Law Division on July 23, 1982 (the first suit). Summary judgment was subsequently sought on various grounds, including an allegation that the Authority had exclusive jurisdiction because the land was within the "port district" which had been created during the interim period by ordinance of North Bergen on December 17, 1981.
North Bergen is a municipality in Hudson County containing approximately 5.4 square miles and with an estimated population of approximately 47,000.[3] It was represented to us at oral *503 argument that approximately 1/3 of the land area of North Bergen is embraced within the "port district."
During the pendency of the prerogative writ action, and prior to the summary judgment motion being decided, ROC Harbor filed a September 7, 1982 application with the newly created Authority seeking substantially the same zoning variance from the height restrictions in North Bergen's zoning ordinance, as well as site plan approval, as had been sought from the Planning Board. The Authority conducted four days of hearings during which ROC Harbor amended its application to request approval of three towers, each over 175 feet in height and containing a total of 551 units, and 128 low-rise units. The project also encompassed about 10,000 square feet of commercial space designed primarily to service residents living in the project area. Additionally, ROC Harbor had presented an alternate site plan proposal (originally presented to the Planning Board) showing a development in accordance with the municipal zoning requirements.
On February 15, 1983 the Authority adopted a resolution approving the "site plan application and variance" sought by ROC Harbor, subject to 13 express conditions, including compliance with all recommendations of the Township Engineer; and approvals by the Hudson County Planning Commission, the New Jersey Department of Environmental Protection, and the United States Army Corp of Engineers. The Authority rejected the alternate site plan as somehow having an unexplained "negative affect [sic] upon the community and a negative affect [sic] upon the intent of the zoning ordinance." The resolution made certain findings, incorporated the Planning Board's findings, and recited the conclusion that as a result of the sub-surface conditions of the soil it is not economically feasible to *504 develop this land without the relief from the height restrictions of our ordinance."[4]
The resolution indicated that the application that had been made to it was "for site plan approval and relief from the height restrictions of the zoning regulations;...." The resolution recited in numerous places that it was granting a "variance" as well as site plan approval. In paragraph numbered 11 of that resolution the Authority said: "this variance will not substantially impair the intent of the zoning ordinance nor negatively affect the municipality." Paragraph 13 recited that "The granting of the variance will not adversely affect the rights of adjacent property owners or residents." The resolution went on in conclusory fashion to track the language of the Land Use Act as then in effect with respect to variances. See N.J.S.A. 40:55D-70 c and d.[5] We note here that aside from the question of whether hardship should have been taken into account on such a "variance" application, on its face the resolution is patently deficient to establish sufficient grounds for approval of the application. See Castroll v. Tp. of Franklin, 161 N.J. Super. 190, 192-193 (App.Div. 1978). Conclusory statements tracking statutory language are not sufficient. See Harrington Glen Inc. v. Mun. Bd. of Adj., Borough of Leonia, 52 N.J. 22, 28 (1968); Commons v. Westwood Zoning Bd. of Adj., 81 N.J. 597, 609-610 (1980); Application of John Madin/Lordland Development International for Pinelands Development Approval, 201 N.J. Super. 105, 114 n. 4 (App.Div. 1985).
Thereafter, the Law Division entered summary judgment in the first suit on February 28, 1983 in favor of Parisi and *505 Creamer vacating the planning board's action on the basis that the Authority now had exclusive jurisdiction over the application.
The judge said in his January 28, 1983 letter opinion that it was "readily apparent that the legislature in establishing a Municipal Port Authority has made this authority a separate entity from the municipality." He then concluded that it would be contrary to his perception of the legislative intent to allow the Authority and the Planning Board to share concurrent jurisdiction. No appeal was taken from that decision in the first suit by any party,[6] perhaps in part because Parisi and Creamer almost immediately filed a second complaint in lieu of prerogative writ on March 31, 1983, this time challenging the Authority's February 15, 1983 approval of ROC Harbor's application.
The new complaint (the second suit) was filed on March 31, 1983 and alleged that the Authority's action was arbitrary, capricious, unreasonable and illegal. It asserted that the variance was not properly granted under N.J.S.A. 40:55d-70 because there was no proof of "exceptional and undue hardship," and also challenged the power of the Authority to change North Bergen's zoning scheme. An amended complaint asserted a claim that the site plan approval was illegal because it had the effect of conveying Marine Road, a municipal right of way, which was a reserved paper street on the Township tax map, to ROC Harbor. Elizabeth Meyers filed a similar complaint on the same date. A third suit, not the subject of this appeal, was also filed by another individual. All of the actions were consolidated.
*506 The trial judge issued two separate letter opinions, each dated December 6, 1983, in response to summary judgment motions. The judge concluded in the first of these opinions that res judicata barred the objectors. He also applied that doctrine against Meyers whom he considered in "privity" with the plaintiffs in the first action under the theory of "general and public interest" matters referred to in In re Petition of Gardiner, 67 N.J. Super. 435, 448 (App.Div. 1961). The judge nonetheless re-examined his January 28, 1983 opinion and again concluded that the Authority was "not subject to the local zoning laws and is independent from the Planning Board." From that conclusion, and without further analysis, he inferred a much broader conclusion and said: "It therefore has complete and exclusive jurisdiction over the land situated within its boundaries." As a result of the first of those opinions he entered a December 19, 1983 order granting partial summary judgment "establishing exclusive jurisdiction in the ... Authority with regard to applications for building plans or site planning approval in this matter."
In his second letter opinion of December 6, 1983, the judge upheld the relief granted by the Authority to ROC Harbor. He found that there was adequate credible evidence to support the Authority's approval of the application. In addressing the argument of the objectors that "hardship" had not been shown and that a variance was not warranted, the judge observed that the Authority was not operating under North Bergen's zoning ordinance, and hence hardship was not an issue.[7] A final judgment dated December 19, 1983 was entered resolving the matter in favor of the authority's action.
*507 Parisi and Creamer appealed the order of December 19, 1983 as well as the judgment of even date. Meyers also appealed the order and the judgment. The appeals were consolidated. On May 24, 1984 we granted appellants' motion to supplement the record to include portions of the "Zoning Ordinance/Port District, North Bergen, N.J.," adopted in March 1984 (obviously subsequent to the Authority's February 15, 1983 approval of ROC Harbor's application)[8] and denied summary disposition. On July 20, 1984 we required appellants to supplement the record with the transcripts of the hearings before the Planning Board. On February 26, 1985 we granted another motion to supplement the record to include the Authority's "Land Subdivision Regulations."
The Authority was created by North Bergen under the authority of the "Municipal Port Authority Law," (the Act). N.J.S.A. 40:68A-29, et seq. Under the Act one or more municipalities may create a "port district" in which it can acquire, construct or operate a "port system." N.J.S.A. 40:68A-31(5) and (6). The December 17, 1981 North Bergen ordinance set forth the purposes of the Authority as:
... the improvement, establishment and development of facilities in its port district for port purposes by or through the acquisition, construction, improvement, maintenance or operation of any and all projects and facilities for the improvement and development of such port district for port purposes or directly related thereto, either directly or by agreement with any county, municipality or person, or in any other manner as in the judgment of the Municipal Port Authority will provide an effective and satisfactory method for promoting its purposes; and shall further have as its purposes, all purposes as provided for by said Municipal Port Authority's Law, and other statutes heretofore or hereafter enacted or applicable thereto.
Essentially, the ordinance recited the same purposes enumerated in N.J.S.A. 40:68A-39.
Under the statutory scheme every Municipal Port Authority is created as a "public body politic and corporate constituting a political subdivision of the State established as an instrumentality *508 exercising public and essential governmental functions to provide for the public health and welfare...." N.J.S.A. 40:68A-40. Although appellants concede that the Authority is a separate political subdivision of the State, they argue that it was never given the power to zone within any designated port district, and certainly not given exclusive power. They contend that the Authority has no jurisdiction to grant relief from the North Bergen zoning ordinance. The Authority's brief takes the position that under the language in N.J.S.A. 40:68A-68 it is not subject to the provisions of Title 40, and hence is not subject to local zoning authority. Appellants challenge whether, notwithstanding that the Authority is a political subdivision, power to regulate land use can be implied from a statute which does not expressly confer such power.
ROC Harbor argues that the objectors are barred by res judicata from their challenge to the Authority's jurisdiction to grant the requested relief. A recapitulation of the relevant events illustrates why res judicata need not bar appellate review of the issue of jurisdiction and ultra vires action of a public entity, at least as to appellant Meyers. Indeed, the public policy nature of the issue strengthens our conclusion that the scope of the Authority's power in the port district is and must be at some point subject to appellate review. The more significant dates involving ROC Harbor's application are set forth chronologically:

 2/27/81 ROC Harbor's application to the planning board.
 12/17/81 North Bergen Municipal Port Authority created.
 6/15/82 Planning Board approved ROC Harbor's application.
 7/23/82 First prerogative writ action filed  challenges planning
 board decision.
 9/7/82 ROC Harbor's application to Authority for site plan
 approval and variance.
 1/28/83 Letter opinion of judge (decides Authority had exclusive
 jurisdiction in port district).
 2/15/83 Authority approves ROC Harbor application.
*509 2/28/83 Order for summary judgment for plaintiffs in first suit
 on grounds of exclusive jurisdiction of authority  first
 suit concluded.
 "Second Action"
 3/31/83 Two prerogative writ complaints filed  challenging
 Authority decision of February 15, 1983.
 12/6/83 Judge's letter opinion regarding exclusive jurisdiction.
 12/6/83 Judge's letter opinion regarding application approval.
 12/19/83 Order for partial summary judgment that Authority
 has exclusive jurisdiction.
 12/19/83 Judgment affirming Authority's approval of ROC Harbor's
 application.
 1/12/84 Parisi and Creamer appealed to this court.
 1/30/84 Meyers appealed to this court.
 3/12/84 Appeals consolidated.
 March '84 Authority adopts "Zoning Ordinance."

There is no claim of delay by any party in challenging either the action of the municipal planning board or the Authority. Although there were essentially continuous challenges to ROC Harbor's application, there is certainly nothing to indicate that Meyers should be barred her appeal as of right to the Appellate Division on the issue of whether the Authority acted ultra vires. This issue was not fully litigated or decided in the first suit in which Meyers was not a party because the challenge there was essentially to the planning board's action. Moreover, the Authority in its determination relied on the findings by the planning board. In determining the second suit the judge again reconsidered his opinion with respect to the exclusive jurisdiction of the Authority in the port district. We decline to apply Petition of Gardiner, supra, to bar the appeal by Meyers to the Authority's determination and the nature of the jurisdiction of the Authority. Furthermore, we do not consider the Meyers' lawsuit as being part of the cause of action challenging the *510 planning board's determination. See 50 C.J.S., Judgments § 796, at p. 339. Even if Parisi and Creamer would be barred by res judicata, we hold that Meyers is not barred by that doctrine.
In the case before us the decision in the first case was that the planning board did not have jurisdiction. Meyers' action did not seek a declaration regarding the planning board, or even as to the Authority's existence in the port district, but a determination that the Authority had no statutory power or jurisdiction to authorize private developers to build contrary to North Bergen's zoning scheme. To apply the doctrine of res judicata here to bar Meyers would also have the result of precluding appellate review of the issue of the nature of the Authority's jurisdiction, and whether it was acting in an ultra vires fashion. Indeed, at the time of the first suit, the Authority had not even adopted zoning regulations. It was not until after the second suit was decided that such regulations were adopted. The power of the Authority to adopt such regulations is now before us on this appeal by virtue of the record being supplemented. The appeal now also encompasses the Authority's action in adopting land use regulations. This is strictly a legal issue of jurisdiction, rather than an adjudication of a dispute or a decision on a zoning application. An appellate court cannot thus be precluded from considering a properly projected legal issue. Neither Petition of Gardiner, supra nor Roberts v. Goldner, 79 N.J. 82 (1979), precludes a review of the legal question of the jurisdiction of the Authority.
The Roberts case arose in a situation where not only this court but the Supreme Court had granted appellate review of the underlying issue. Roberts involved a second taxpayer's challenge to the legality of the promotion of patrolman Goldner to sergeant on the very same grounds as the first suit, Adams v. Goldner, 79 N.J. 78 (1979), decided the same day. In Adams we had set aside the determination of the trial court and held that there was no vacancy to which Goldner could be promoted. That decision was affirmed by the Supreme Court the same day *511 it decided Roberts. The second suit which had been brought by Roberts, another taxpayer, after what he perceived as an adverse trial court decision, had also sought to challenge the very same promotion. In Roberts not only was the issue identical in both suits, but the second suit sought the same relief which ultimately was afforded in the Appellate Courts. That suit was dismissed under the doctrine of res judicata. However, the same result could have been reached by staying that action pending the outcome of the appeal in Adams and ultimately dismissing on the grounds of mootness.
We need not decide the issue of whether the Act gives the Authority power to determine the nature of structures which are precisely related to port purposes. We discern a legislative intent that a municipal port authority play a significant role in planning and carrying out the orderly and attractive development of port facilities and without undue encumbrance by municipal zoning. N.J.S.A. 40:68A-40(8) states that the Authority has the power:
To determine the exact location, type and character of and all matters in connection with all or any part of the port system which it is authorized to own, construct, establish, effectuate or control....
The term `Port System' is defined in N.J.S.A. 40:68A-31(6) as:
`Port system' shall mean all real and personal property acquired, constructed or operated or to be acquired, constructed or operated by a municipal port authority for the purposes of the municipal port authority, including piers, wharves, docks, bulkheads, slips, basins, anchorage areas, jetties, breakwaters, harbor craft of any kind, buildings, structures, warehouses, terminals, loading areas, plants, vehicular roadways, railroad connections and tracks, yards, sheds and every kind of terminal, storage or supply facility now in use or hereafter designed for use to facilitate shipping, the handling, storage, loading or unloading of freight or cargo at marine terminals, and all other franchises, property and rights therein and appurtenances thereto necessary or useful and convenient in connection therewith;....
We are satisfied from our consideration of the statutory framework that approval of high-rise condominiums and development by private parties of that type of facility is not within the definition of "port system," as it is not intended to facilitate the shipping, handling, storage, loading or unloading of freight *512 or cargo at marine terminals, is not a necessary "franchise or appurtenance" thereto, and is not "necessary or useful and convenient in connection therewith." Obviously, the existence of high-rise condominiums along the Hudson River, whether below or above the top of the Palisades, is not dependent upon whether a "port district" exists or whether a "port system" is created.
Nor does the framework of the statute provide sufficient standards, see Worthington v. Fauver, 88 N.J. 183, 208-209 (1982); Roe v. Kervick, 42 N.J. 191, 232 (1964), to infer that such authority exists for projects which are not undertaken by the Authority itself and which do not have a direct connection with port facilities. Not only are there no criteria in the statute for development approvals, but no method of review has been specified. Furthermore, as we previously noted, the resolution of the Authority approving ROC Harbor's application lacked sufficient findings to support the approval. This would in other circumstances have required, at the very least, a remand for additional findings.
We note in passing that the proofs as to the status of Marine Road not being a dedicated street were inadequate and the record does not provide a sufficient basis for resolving that issue. Statements of an attorney are certainly not evidential. The general rule is that the laying out of a paper street on a filed map constitutes irrevocable dedication, which may be accepted at any time in the future by the municipality. Highway Holding Co. v. Yara Engineering Corp. 22 N.J. 119, 125 (1956); State v. Birch, 115 N.J. Super. 457, 463-464 (App.Div. 1971). Hence, the existence of the street could not be determined without an evidentiary hearing.
Accordingly, we reverse the determination of the trial judge upholding the Authority's grant of approval of ROC Harbor's application insofar as same exceeds the powers vested in the Authority.
*513 PETRELLA, J.A.D. (concurring).
I concur in the result reached by the majority. I state my reasons separately because I would hold that N.J.S.A. 40:68A-29, et seq. does not grant anything akin to zoning authority to a Municipal Port Authority.[1] There can be no dispute that such a power is not expressly granted in the statutory framework for such authorities. Traditional statutory construction rules teach that the legislature is presumed familiar with its enactments, and that it is presumed that the legislature enacts statutes with the knowledge of prior statutes in the same field as well as other legislation in general. See Mahwah Tp. v. Bergen County Bd. of Taxation, 98 N.J. 268, 279 (1985); Jacobs v. N.J. State Highway Authority, 54 N.J. 393, 401 (1969); Brewer v. Porch, 53 N.J. 167, 174 (1969). Except for some sparse legislative history with respect to relatively recent amendments to N.J.S.A. 40:68A-38 regarding dissolution of a Municipal Port Authority by the municipality, and amendments to N.J.S.A. 40:68A-33 and 43, no legislative history has been found concerning the enactment of L. 1960, c. 192.
Although a Municipal Port Authority is not treated as a municipality under Title 40, and may not even be subject to local zoning regulations if it chooses, as a public entity, to construct a project within its sphere of influence, it can also be said that the failure to make it subject to Title 40 evinces an intent not to confer upon it zoning authority under the provisions of the Land Use Act, N.J.S.A. 40:55D-1, et seq.[2]
*514 I can find no basis for implying as a necessary or incidental power in a Municipal Port Authority the ability to permit nongovernmental entities, i.e. private entities, to disregard local planning and zoning requirements. Indeed, where independent agencies have been created, and the legislature intended to confer zoning authority, it has expressly done so, and even provided for a method of review. See, e.g., Hackensack Meadowlands Reclamation and Development Act, N.J.S.A. 13:17-1, et seq., and particularly section 13:17-6(i) and 13:17-9 through 21; the Pinelands Protection Act, N.J.S.A. 13:18A-1, et seq., particularly N.J.S.A. 13:18A-4, -8 and -14; the Wetlands Act of 1970 (N.J.S.A. 13:9A-1, et seq.); and the Coastal Area Facility Review Act (N.J.S.A. 13:19-1, et seq.) These statutes clearly demonstrate that the legislature knew how to confer development approval and land use control authority when it desired to do so. The failure to expressly provide for such authority in the Municipal Port Authority Act warrants the conclusion that the legislature did not intend to obviate other municipal controls in the port district. Indeed, the parties in this appeal recognize that the logical extension of the argument that the Authority has exclusive jurisdiction in the port district area would mean that there would be no effective municipal regulation therein, including police, fire and health authority.[3] To reach this result may also require an implied repeal in part of various police power statutes. Such a result should not be attributed to the legislature without an express and clear indication of such intent. Mahwah Tp. v. Bergen County Bd. of Taxation, supra, 98 N.J. at 280. Implied repealers are not favored. Id. at 281.
*515 Although N.J.S.A. 40:68A-68 enjoins that the statute should be liberally construed to effect its purposes, in my opinion those purposes are limited to the creation and operation of a "port system" within the "port district" and that the Municipal Port Authority Act must be construed in harmony with other municipal regulations which still exist in the port district, and certainly those with respect to regulating nongovernmental entities. I would thus read the act in pari materia with other statutes. State v. Biegenwald, 96 N.J. 630, 635 (1984), opinion clarified 97 N.J. 666 (1984); Loboda v. Clark Tp., 40 N.J. 424, 435 (1963).
Under this thesis the enactment of a zoning ordinance and land use regulations by the Authority are void as ultra vires. Hence, it is unnecessary to consider the implications of the adoption of such land use regulations after the purported approval of ROC Harbor's application and whether its application should be reconsidered by the Authority thereunder.
The mere fact that the Authority is a public body corporate and politic established as an instrumentality exercising public and essential governmental functions[4] (N.J.S.A. 40:68A-40), and even has condemnation powers (N.J.S.A. 40:68A-40(4) and N.J.S.A. 40:68A-53), as do such entities as the New Jersey Turnpike Authority and the New Jersey Highway Authority, does not mean that such authorities have or should be considered to have land use or development regulation powers. The fact that they themselves may or may not be subject to local land use regulation with respect to their own activities is not dispositive. It is one thing not to be subject to local zoning authority as a public entity. See Town of Bloomfield v. N.J. Highway Auth., 18 N.J. 237 (1955); N.J. Turnpike Auth. v. *516 Sisselman, 106 N.J. Super. 358, 366-367 (App.Div. 1969), certif. den. 54 N.J. 565 (1969). It is quite another thing to be invested with "exclusive jurisdiction," including development and land use approval in the district, over an area of land within another political subdivision.
The trial judge applied a non sequitur when he concluded that because a municipal port authority may not be subject to local zoning it therefore has exclusive jurisdiction in the area. The situation becomes even more anomalous when it is considered that a municipality can make its port district coterminous with the municipal boundaries. If ROC Harbor's position at oral argument was correct with regard to the total exclusiveness of the Authority in the port district, then essentially a municipality could create an Authority coterminous with its borders which would then usurp all other powers of the municipality, except the ability of a municipality to dissolve the creature it created. N.J.S.A. 40:68A-38. It can hardly be said that a municipality can abdicate its responsibilities and duties in the "port district" in such a fashion. Surely the legislature never contemplated such an occurrence. Moreover, such exclusive jurisdiction would make a creature of the municipality (N.J.S.A. 40:68A-32), which holds its personal and real property "for the local unit,"[5]N.J.S.A. 40:68A-40(4), a greater authority in the "port district" than the municipality which created it and which can also dissolve it. N.J.S.A. 40:68A-38.
In my view, the action of the Authority in enacting zoning and land use regulations was ultra vires, and the action of the authority in purporting to approve or authorize a development *517 project in the port district without regard to compliance with municipal regulations was ineffective.
NOTES
[1] This entity has variously been referred to as ROC Harbour Corp. and ROC Harbor Corp. For simplicity we will use the spelling Harbor because the captions in the pleadings below did so. ROC Harbor was apparently contract purchaser of the involved land while Hudson Plaza, Inc. and Asset Management Corporation were listed as owners of the property.
[2] The record does not reflect whether North Bergen's zoning and planning ordinances, as then in effect, provided for an appeal to the governing body. See N.J.S.A. 40:55D-17 as in effect prior to the amendment thereto by L. 1984, c. 20.
[3] New Jersey Municipal Data Book (1985 edition) at 349.
[4] At that time the Authority had no "ordinance" of any kind, whether related to planning or zoning or anything else. Indeed, the Authority does not appear to have the power to adopt ordinances. The only ordinance then being referred to had to be the municipal zoning ordinance.
[5] The February 17, 1983 resolution was adopted prior to amendments by L. 1983, c. 260, § 13, effective July 7, 1983, and L. 1984, c. 20, § 12, effective March 22, 1984.
[6] Parisi and Creamer, having obtained a tactical advantage, would hardly have been expected to appeal the grant of summary judgment in the first case which had overturned the action of the planning board. Counsel for Parisi and Creamer candidly conceded at oral argument that in raising all potential objections to the planning board's action, they had not anticipated that they would prevail on the claim that the Authority had exclusive jurisdiction in the port district.
[7] Interestingly, subsequent to the judge's decision, the Authority adopted its own land use plan and zoning "ordinance" in March 1984, which imposed a 75 foot height limitation in the port district. In any event, the judge was of the view that "the feasibility and reasonableness of its plan for development of this area was the sole issue." The judge also decided, based on representations of ROC Harbor's attorney, that Marine Road was no longer dedicated. However, he did not determine whether it was municipally owned.
[8] See note 6, supra.
[1] Nor does it appear that such power is granted under the still extant 1948 legislation which also authorizes municipal port authorities. See N.J.S.A. 40:68A-1, et seq., known as the "Port Authority Law," which was enacted by L. 1948, c. 349. This law appears to cover many of the same statutory grounds covered by the subsequent enactment in 1960 of the "Municipal Port Authority Law," N.J.S.A. 40:68A-29, et seq.
[2] N.J. Const. (1947) Art. IV, § 6, par. 2 would seem to limit the authority of the legislature to authorize zoning powers to municipalities when it says:

2. The Legislature may enact general laws under which municipalities, other than counties, may adopt zoning ordinances....
But see Meadowlands Regional Development Agency v. State, 112 N.J. Super. 89, 122-124 (Ch.Div. 1970), aff'd 63 N.J. 35 (1973), appeal dismissed 414 U.S. 991, 94 S.Ct. 343, 38 L.Ed.2d 230 (1973).
[3] Query the applicability of the Tort Claims Act in the port district.
[4] The Authority is also constituted "a political subdivision of the State." It is not clear where in the scheme of government organization these types of authorities fit. If it thus would qualify as one of the "instrumentalities of the State government," the statute does not comply with N.J. Const. (1947), Art. V, Section IV, par. 1, by failing to allocate these authorities among the principle State departments.
[5] The statute authorizing creation of Municipal Port Authorities essentially extends power to an Authority "to acquire, rent, hold, use and dispose of" property "[i]n its own name but for the local unit," [emphasis supplied] "necessary or useful and convenient for the purposes of the municipal port authority." N.J.S.A. 40:68A-40(4). Local unit is defined as the municipality which created the Authority. N.J.S.A. 40:68A-31(12).